Jared Allebest, #13485 (UT) #034640 (AZ) #325086 (CA)
Attorney for Plaintiffs
8978 South Quarry Stone Way
Sandy, UT 84094
Cell: (949) 322-3991
Videophone: (801) 204-9055
Email: Jared@Allebest.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROBIN THOMPSON, an individual and Roes I-X | COMPLAINT |
| Plaintiffs, | Civil No. |
| vs. | Judge |
| SALT LAKE TRUCKING GROUP, LLC, an organization, FTA TRANSPORT, INC, an organization and ROES I-X. | Jury Trial Requested |
| Defendants. | |

ROBIN THOMPSON (hereinafter "Mr. Thompson"), by and through his attorney JARED M. ALLEBEST of the Allebest Law Group, hereby submit the following:

**PRELIMINARY STATEMENT**

1. Mr. Thompson, the Plaintiff, is an individual who is Deaf, and is bilingual in English and American Sign Language (ASL). He does not use hearing aids, cochlear implants, or other similar personal amplification devices.  On one or more occasions, the Defendants discriminated against the Plaintiff by refusing to hire him by reason of his disability of being Deaf and for refusing to provide him with effective communication when he made a written request for an ASL interpreter for his job interview but was provided a minor child to interpret for him at this job interview.

1

2. Mr. Thompson is a qualified individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. 42 U.S.C. § 12111(8).

3. Salt Lake Trucking Group, LLC is a covered entity who is an employer that is engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, 42 U.S.C. § 12111 (5)(A).

4. FTA Transport, Inc is a covered entity who is an employer that is engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, 42 U.S.C. § 12111 (5)(A).

5. A covered entity shall not discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112 (a) "Discrimination"

6. As a result, a covered entity cannot refuse "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112 (5)(A). It also means that a denial of "employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the

employee or applicant" may also be a basis for discrimination. 42 U.S.C. § 12112 (5)(B).

7. The ADA recognizes that ASL interpreters are auxiliary aids and services that a covered entity must provide to their employees when requested or offered to the employee. The term "auxiliary aids and services" means "qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments; qualified readers, taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments; acquisition or modification of equipment or devices; and other similar services and actions." 42 U.S.C. § 12103(1)(A-D).

8. Although ASL interpreters are not defined under Title I of the ADA, they are defined under Title II and III. A qualified interpreter means an "interpreter who, via a video remote interpreting (VRI) service or an on-site appearance, is able to interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary. Qualified interpreters include, for example, sign language interpreters, oral transliterators, and cued-language transliterators."[1]

9. Although there is no prohibition on requiring an individual with a disability to bring another individual or minor child to interpret for that person under Title I of the ADA, it is forbidden under Title II and III.[2]

10. It is important to point out that the ADA doesn't require the ASL interpreter to be licensed and certified. It just requires them to be "qualified." Utah has recently passed a law requiring that qualified ASL interpreters must also be licensed and

---

[1] 28 C.F.R. § 35.104 (Title II), 28 C.F.R. § 36.104 (Title III).

[2] 28 C.F.R. § 35.160(c)(1-3) (Title II), 28 C.F.R. § 36.303(2-4) (Title III).

certified. Utah recently passed HB371 which amended Title 53A, Chapter 26a to now require interpreters to obtain state certification as American Sign Language-trained interpreters and that anyone who interprets in the state of Utah without being certified is charged with a Class B Misdemeanor.

11. As a result of the passage of HB371, Utah Administrative Code Rule R746-510-2, defines a "Certified Interpreter" to mean a "person who is certified as meeting the certification requirements" of the "Interpreter Services for the Hearing Impaired Act."

12. The Plaintiff was discriminated by reason of his disability of being Deaf and suffered adverse employment action by not being hired for the job he applied for on the basis of unfounded fears or generalizations about individuals who are Deaf. An employer cannot refuse to hire a person with a disability because of a slightly increased risk or because of fears that there might be a significant risk sometime in the future. The determination must be individualized to the disabled applicant and not generalized to the disability that the potential employee has.[3]

13. Studies show that it is hard for Deaf people to find employment. "The employment gap between deaf and hearing people in the United States is a significant area of concern. In 2014, only 48% of deaf people were employed, compared to 72% of hearing people. Among people in the labor force, deaf people were as likely to work full time as their hearing peers. This suggests that once deaf people obtain employment, they are just as likely to work full time as their hearing peers."[4]

---

[3] See *Sutton v. United Air Lines, Inc.* 527 US 471 (1999), *Murphy v. United Parcel Service, Inc.* 527 US 516 (1999), *Sprague v. United Air Lines* Civil Action No. 97-12102-GAO (D. Mass. Aug. 7, 2002)

[4] Garberoglio, C.L., Cawthon, S., & Bond, M. (2016). Deaf People and Employment in the United States: 2016. Washington, DC: U.S. Department of Education, Office of Special Education Programs, National Deaf Center on Postsecondary Outcomes.

14. The basis for passing the Americans with Disabilities Act was because Congress found that physical or mental disabilities do not "diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination" and that historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(1-2)

15. As a result, "discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services" and "that unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination" 42 U.S.C. § 12101(a)(3-4)

16. Thus, "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services,

---

https://www.nationaldeafcenter.org/sites/default/files/resources/Deaf%20Employment%20Report_final.pdf. Accessed on April 12, 2018.

programs, activities, benefits, jobs, or other opportunities" and that "census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally." 42 U.S.C. § 12101(a)(5-6)

17. Based on the above facts, Congress saw that the "Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals" and "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity." 42 U.S.C. § 12101(a)(5-6)

## JURISDICTION AND VENUE

18.    This action arises under the law of the United States, including Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), The Court has jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. 1343(a)(3), as well as 42 U.S.C. § 12188(a) and 29 U.S.C. § 794a and 42 U.S.C. § 1983 for claims arising under color of law.

19.    Venue of this action is appropriate in the United States District Court for the District of Utah, Central Division, pursuant to 28 U.S.C. § 1391(b) and (c) as the claim arose in such district and, further, as the Defendants conduct business in such district.

20. This Court also has jurisdiction over Mr. Thompson's state law claims set

forth in this complaint pursuant to its supplemental jurisdiction to hear state law claims under 28 U.S.C. § 1367(a). Both the federal and state claims alleged herein arose under a common nucleus of operative facts, the state action is so related to the federal claim that they form part of the same case or controversy, and the actions would ordinarily be expected to be tried in one judicial proceeding.

## PROCEDURAL REQUIREMENTS

21. Mr. Thompson filed a timely complaint with the Utah Antidiscrimination and Labor Division (UALD) on October 16, 2017 in which he alleged the statutory violations asserted herein. (See Exhibit #1 and Exhibit #2).

22. Counsel for the Plaintiff sent a letter to the UALD indicating that he would be representing the Plaintiff and requested that Mr. Thompson's complaint be cross-filed with the Equal Employment Opportunity Commission (EEOC). (See Exhibit #3).

23. The UALD notified all parties on November 9th, 2018 of their proposed determination on this case. (See Exhibit #4).

24. The Plaintiff filed an appeal to the UALD's Determination and Order on November 29th, 2018. (See Exhibit #5).

25. The UALD made a second Determination and Order on January 7th, 2019 and didn't award the plaintiff any damages after finding that there was a case of disability discrimination and that the Plaintiff was denied a request for a reasonable accommodation but that the Defendants had legitimate non-discriminatory reason for its action against the Plaintiff and that the Plaintiff failed to establish that the Defendants' reason for not hiring the Plaintiff was a pretext for discrimination. (See Exhibit #6).

26. The Plaintiff sent an email to the UALD on January 23rd, 2019 requesting a

"Right to Sue" letter. The UALD provided the Plaintiff with a "Request for Withdrawal of Charge of Discrimination and Request for a Notice of Right to Sue" form on January 25th, 2019. The Plaintiff signed the form on January 28th, 2019. (See Exhibit #7, Exhibit #8, and Exhibit #9).

27. The EEOC issued a Notice of Right to Sue the Defendants. It informed the Plaintiff that he had 90 days from the attempted delivery of the notice as his last known address of record or 90 days from the receipt of the notice. (See Exhibit #10).

28. ROBIN THOMPSON has filed this complaint before the 90-day deadline since the Notice of Right to Sue was provided to the Plaintiff on April 3rd, 2019 and the 90 day deadline is on July 2nd, 2019.

## THE PARTIES

29.   ROBIN THOMPSON, the Plaintiff, is an individual who is Deaf and communicates via American Sign Language.

30. Salt Lake Trucking Group represents a group of trucking and logistics companies founded in 1995 and have united many companies under the umbrella of the Salt Lake Trucking Group. It currently has 1,000 employees. (See Exhibit #11). The Salt Lake Trucking Group is located at 5745 West 300 South Salt Lake City, UT 84104.

31. FTA Transport, Inc is a general freight trucking company located at 5745 West 200 South Salt Lake City, UT 84104.

## FACTS

32. Mr. Thompson was encouraged to apply at Salt Lake Trucking Group by a friend named Coralynn Henson. He applied for the position. He applied online for the position of OTR Truck Driver. (See Exhibit #12)

33. On September 23rd, 2017, Mr. Thompson sent an email to Dan Donne asking for an American Sign Language (ASL) interpreter for the job interview that was scheduled on September 26th, 2017. Mr. Thompson's request reads, "I will see you this Tuesday 5:30pm and I forgot to add I will need an ASL Interpreter for that interview too. Hope thats not problem for you?" (See Exhibit #13)

34. Mr. Donne responded to Mr. Thompson's request for an ASL interpreter by telling that "you are applying for a job. We are not reaching out to you specifically to say come work for us. You reach to us for this job. If you need an interpreter you need to provide one and bring them with you. Things would be different if we sought you out personally." In another email, Mr. Donne told him that "If you need an interpreter you need to make Provisions yourself." (Id)

35. Coralynn Henson sent an email to Mr. Thompson reminding him to tell Dan that he was bringing Ms. Henson's 16 year old daughter to interpret for him at the interview. Ms. Henson's email reads, "Just a reminder to let Dan know that you're bring your friend's daughter who already did help out the last time." Ms. Henson used her own 16 year old daughter to interpret for her own job interview with Salt Lake Trucking Group. (Id)

36. Mr. Thompson had an interview with an individual named Andrew on September 26th, 2017. An ASL interpreter was not present at that interview because Salt Lake Trucking Group did not provide one. Mr. Thompson used Ms. Henson's 16 year old daughter to interpret for him at that interview. Ms. Henson's 16 year old daughter was not a qualified ASL interpreter at the time she interpreted for Mr. Thompson at the job interview.

9

37. Not only did the Defendants actions of using a minor to interpret for a deaf applicant violate title I of the ADA, it was also extremely unfair, unprofessional and unethical for the business to allow a young sixteen year old female be the interpreter between an interviewer and interviewee. This is true regardless if the applicant had a hearing loss or not. It would be extremely unfair, unprofessional and unethical for the business to allow a young sixteen year old female to interpret for an applicant that does not speak English as their first or native language and communicates in a foreign language. It is disturbing that the Defendants would have thought that using a minor to interpret for an applicant would have been the appropriate way to conduct an interview with a potential candidate for employment. It is just bad business ethics to conduct business this way.

38. Mr. Thompson followed up with Mr. Donne asking for paperwork because he was eager to start work immediately. Mr. Thompson never heard back from Mr. Donne or anyone else at Salt Lake Trucking Group.

39.      Mr. Thompson filed a complaint with the Utah Antidiscrimination and Labor Division (UALD) on October 16, 2017 (See Exhibit #1 and Exhibit #2).

40. The UALD sent out a letter to the Plaintiff on November 16th, 2017 acknowledging that his discrimination complaint has been filed with the UALD. (See Exhibit #14).

41. The UALD sent out a notice in the mail sometime in late November 2018 requesting that all parties meet for mediation in the matter of *Robin Thompson v. Salt Lake Trucking Group, LLC* (UALD # B8-0080, EEOC # 35C-2018 0080) on December 21, 2017 at 9:30 PM. However, counsel for the Plaintiff had a preplanned holiday trip

and that it was reschedule mediation for another date.

42. The Defendants filed a response with the UALD on February 22nd, 2018 stating that "as discussed over the phone yesterday, the Salt Lake Trucking Group is not a company that has employees. It's a branding umbrella under which a few other companies operate.  Robin Thompson came in for an interview posted by FTA Transport, Inc., however, he was not hired, and has never been an employee of any company affiliated with the Salt Lake Trucking Group." (See Exhibit #15).

43. Mr. Thompson, through his attorney, filed a response to Salt Lake Trucking Group's February 21, 2008 response to his charges with the UALD on March 5, 2018 and requested that the UALD add FTA Transport as a co-defendant/respondent in the matter because both Salt Lake Trucking Group, LLC and FTA Transport, Inc are jointly and severally liable for violating title I of the Americans with Disabilities Act. (See Exhibit #16).

44. The UALD sent out a "Notice of Rescheduled Mediation" on March 28th, 2018 informing all parties that mediation was rescheduled for May 1st, 2018 at 9:30 AM at the UALD office located at 160 E 300 S, Salt Lake City, UT 84111. (See Exhibit # 17).

45. Mediation was held on May 1st, 2018 on at 9:30 AM. Present for the mediation was a mediator from the UALD, the Plaintiff, counsel for the Plaintiff and Andrew Glancy as well as two qualified and certified American Sign Language (ASL) interpreters. The parties were not able to reach a resolution at mediation.

46. Michael Barrett, an investigator at the UALD, sent out a letter on June 11th, 2018 to both the Plaintiff and Defendants that he will be the investigator on this matter. (See Exhibit #18).

47. The UALD contacted the Plaintiff and asked him to participate in a telephonic interview with Michael Barrett. The Plaintiff asked for a in person interview with Mr. Barrett as a reasonable accommodation because a telephonic interview would not be the best way for the investigator to interview the Plaintiff. This request was granted, and an interview was held on Thursday, September 6, 2018 at 9:30 A.M.

48. The UALD notified all parties on November 9th, 2018 of their proposed determination on this case. (See Exhibit #4). It awarded the Plaintiff a de minimis award of $1 after finding that there was a case of disability discrimination but that the Defendant(s) had a legitimate non-discriminatory reason for Its action against the Plaintiff.

49. Counsel for the Plaintiff sent an email to Mr. Barrett on November 27th, 2018 that they did not agree with the UALD's decision to award $1 to Mr. Thompson. (see Exhibit #19)

50. The Plaintiff filed an appeal to the UALD's Determination and Order on November 29th, 2018. (See Exhibit #5).

51. A local Utah News station aired a story about the UALD's decision on November 30th th, 2018.[5]

52. The UALD made a second Determination and Order on January 7th, 2019 and didn't award the plaintiff any damages after finding that there was a case of disability discrimination and that the Plaintiff was denied a request for a reasonable accommodation but that the Defendants had legitimate non-discriminatory reason for Its

---

[5] Branagh, Tumulty. "Deaf Layton man files complaint against trucking company for not providing ASL interpreter" KUTV 2. https://kutv.com/news/local/deaf-layton-man-files-discrimination-lawsuit-against-company-for-not-providing-interpreter Accessed on May 12th, 2019.

action against the Plaintiff and that the Plaintiff failed to establish that the Defendants' reason for not hiring the Plaintiff was a pretext for discrimination. (See Exhibit #6).

53. The Plaintiff sent an email to the UALD on January 23rd, 2019 requesting a "Right to Sue" letter. The UALD provided the Plaintiff with a "Request for Withdrawal of Charge of Discrimination and Request for a Notice of Right to Sue" form on January 25th, 2019. The Plaintiff signed the form on January 28th, 2019. (See Exhibit #7, Exhibit #8, and Exhibit #9).

54. The UALD sent the Plaintiff a letter informing him that his complaint with the UALD is being closed on January 30th, 2019. (See Exhibit #20).

55. The EEOC issued a Notice of Right to Sue the Defendants. It informed the Plaintiff that he had 90 days from the attempted delivery of the notice as his last known address of record or 90 days from the receipt of the notice. (See Exhibit #10).

56. The Plaintiff has filed this complaint before the 90-day deadline since the Notice of Right to Sue was provided to the Plaintiff on April 3rd, 2019 and the 90-day deadline is on July 2nd, 2019.

57. The Plaintiff now files his complaint against the Defendants because in a statement provided by the Salt Lake Trucking Group, LLC., it appears that that Salt Lake Trucking Group, LLC was acting either as a parent organization of FTA Transport, Inc or as the agent for FTA Transport, Inc. by conducting interviews on FTA Transport, Inc's behalf for the purposes of finding new employees for FTA Transport, Inc. Thus, Both Salt Lake Trucking Group, LLC and FTA Transport, Inc are jointly and severally liable for potentially violating Title I of the ADA in refusing to provide an ASL interpreter for Robin Thompson, using a newly hired employee's daughter to interpret for Mr.

Thompson at his interview and refusing to hire him by reason of his disability.

58. The Plaintiff was discriminated by reason of his disability of being Deaf and suffered adverse employment action by not being hired for the job he applied for on the basis of unfounded fears or generalizations about individuals who are Deaf. An employer cannot refuse to hire a person with a disability because of a slightly increased risk or because of fears that there might be a significant risk sometime in the future. The determination must be individualized to the disabled applicant and not generalized to the disability that the potential employee has.

## On their First Cause of Action:

### AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12111 et seq.
### (Against Defendants)

59. Plaintiff incorporates by reference the allegations of paragraphs 1 through 41 above.

60. Plaintiff is an individual with a disability because he is substantially limited in the major life activities of, hearing, speaking, and communicating. See 42 U.S.C. § 12102 (2)(A).

61. At all times relevant, Mr. Thompson was able to perform the essential functions of a truck driver and was qualified to work as an employee for the Defendants.

62. Defendant Salt Lake Trucking Group, LLC and FTA Transport, Inc are employers within the meaning of the act. Upon information and belief, Salt Lake Trucking Group, LLC and FTA Transport, Inc have more than 15 employees. Salt Lake Trucking Group, LLC and FTA Transport, Inc appear to operate either under a single corporate entity or jointly as separate individual corporate entities. Jonathan Glancy is listed as the registered agent for both Salt Lake Trucking Group, LLC and FTA

Transport, Inc (See Exhibit # 21 and Exhibit #22).

63. The Defendants subjected the Plaintiff to disparate treatment and failed to make reasonable accommodations for his disability not providing effective communication with the Plaintiff but provided a minor child to interpret for him at his job interview.

64. The Plaintiff was discriminated by reason of his disability of being Deaf and suffered adverse employment action by not being hired for the job he applied for on the basis of unfounded fears or generalizations about individuals who are Deaf. An employer cannot refuse to hire a person with a disability because of a slightly increased risk or because of fears that there might be a significant risk sometime in the future. The determination must be individualized to the disabled applicant and not generalized to the disability that the potential employee has.

65. Defendant engaged in intentional discrimination, with malice, reckless indifference, and deliberate indifference.

66. The Plaintiff was injured as the result of Defendant's conduct. He experienced severe emotional distress, a loss of income because he was denied employment on the basis of his disability, had to spend extra time and money to find employment elsewhere, was forced to hire an attorney to seek a resolution in this matter, as well as and other damages.

67. The Plaintiffs have been forced to engage the services of an attorney. Therefore, he is entitled to an award of the attorney's fees and costs.

## On Their Second Cause of Action

(Professional Negligence)

15

68. The allegations in paragraphs 1-84 above and the below are incorporated herein by reference.

69. Defendants owed the Plaintiff a duty to exercise reasonable care and diligence to that the Plaintiff was provided with a qualified and certified ASL interpreter as required by the Americans with Disabilities Act and violated that duty by providing a minor child to interpret for the Plaintiff. It also had a duty to not discriminate against Plaintiff by refusing to hire him because of his disability.

70. The duties that the Defendants owed to the Plaintiff include, but are not limited to:

a. To provide the Plaintiff with a qualified and certified American Sign (ASL) Language interpreter at his job interview

accurate and honest accounting of the Plaintiff's visits to their offices;

d. to comply with all state and federal antidiscrimination laws requiring a covered entity to provide effective communication to a patient with a hearing loss.

71. Plaintiff has suffered damages as a result of the Defendant's negligence.

**RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court provide the following relief, inter alia, as permitted by law:

(a) A declaration that Defendant's policies, procedures, and practices have subjected Plaintiff to discrimination in violation of Title I of the Americans with Disabilities Act;

(b) A declaration that the Defendant is has engaged in professional negligence by breaching the duty owed to the Plaintiff by failing to provide effective communications

16

for a patient who is deaf or hearing impaired and refusing to hire the Plaintiff by reason of his disability;

      (b) Compensatory damages;

      (c) Equitable relief;

      (d) Punitive damages;

      (e) Reasonable attorneys' fees and costs;

      (f) All other necessary and appropriate relief at law and equity deemed appropriate by the Court.


**JURY DEMAND**

      Plaintiff through his undersigned attorneys, hereby demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38.


DATED this 12th day of May 2019.

<u>/s/: Jared Allebest</u>

Jared Allebest,
#13485 (UT), #034640 (AZ), #325086 (CA)
Allebest Law Group
Attorney for Plaintiffs

## ATTORNEY CERTIFICATE OF SERVICE

I hereby certify that on May 12th, 2019, I have made service of the foregoing on the party/ies listed below via Hand Delivery and/or Electronically via USDC CM/ECF system.

Jonathan Glancy
Salt Lake Trucking Group, LLC
5745 W 300 S
Salt Lake City, UT 84104

Jonathan Glancy
FTA Transport, Inc
5745 W 200 S
Salt Lake City, UT 84104


DATED this 11nd day of May 2019.
/s/ Jared Allebest
Allebest Law Group
Attorney for Plaintiff

18

# Exhibit #1

Utah Antidiscrimination
& Labor Division
Employment Discrimination
160 East 300 South, 3rd Floor
PO Box 146630
Salt Lake City, UT 84114-6630
Phone: 801-530-6801
Fax: 801-530-7609
Email: discrimination@utah.gov

**INTAKE QUESTIONNAIRE**

| | | | |
|---|---|---|---|
| FOH | _____ | LOH | _____ |
| LOR | _____ | 180 | _____ |
| Intake | _____ | 300 | _____ |
| Waiver | _____ | ADA | _____ |

(Do Not Mark in this Space) 5/15

**THIS FORM DOES NOT REPRESENT A CHARGE OF DISCRIMINATION WITH THE DIVISION.** In order to file a Charge with the Division, you must complete and return this form. The Division will use the information in this Intake Form to draft a separate Charge which will be mailed to you. You will then need to sign the Charge and have it notarized. The Division can formally open a case only after it has received your signed, notarized Charge.

You must complete all pages. We are unable to process forms that are incomplete and this form may be rejected until we receive the missing information. Your charge cannot be processed unless this form is complete. If you need help filling out this form, please contact us either by phone or email. You must write legibly.

### SECTION 1: YOU

Your Name: Robin Thompson
Email Address: Trobin.wvp@gmail.com
Date of Birth: 8/4/67

Mailing Address: 51 N 1000 E
Apt #:
City: Centerville

Telephone #: 801 938 5830
Cell #: 801 520 6137
State: UT   Zip: 84014

Name, address & telephone number of nearest relative or contact person not living with you (as a way to locate you if the Division cannot contact you): 404 288 0160   3435 Larklane Decator GA 30032

Are you represented by a lawyer?   ☐ No   ☒ Yes
Lawyer's Name: Jared Allebest
Phone: (945) 322-3591

**Before the Division can talk to your lawyer about this case, please have your lawyer submit a "Letter of Representation." Until then, Division staff cannot communicate with your lawyer.

If you would like the Division to be able to communicate on your behalf with someone other than a lawyer (spouse, parent, advocate, etc.), you will need to submit a separate signed letter with the name and contact information of that person. The Division can provide you with a form letter for you to complete.

This information is used for internal statistical purposes only.
How did you hear about UALD? Lawyer
Race:
National Origin:
Gender:

### SECTION 2: YOUR EMPLOYER

Name of the Employer You are Filing Against: Salt Lake Trucking Co
Telephone #

Address of where you worked:

City:

Website (If known):

State:   Zip:

Name of Corporation OR Name of your employer listed on your W2 Tax form OR Name of employer listed on your paycheck:

Name of Employer's Highest Official:
Telephone #

Address: | Page **2** of 7

City: | State: | Zip:

Does your employer have at least 15 Employees in Utah? □ No ☒ Yes □ Don't Know

How many employees does the company have nation-wide? □ Less than 15 □ 15 - 100 □ 101 -200
□ 201 - 500 ☒ 500+

Were you also employed by a staffing agency? ☒ No □ Yes
If yes, a second intake questionnaire will need to be filed for the staffing agency.

Were you discriminated against/harassed because of a disability? □ No ☒ Yes
If Yes, you must fill out and submit the additional ADA Questionnaire.

## SECTION 3: YOUR EMPLOYMENT WHERE YOU EXPERIENCED DISCRIMINATION

Date of Hire: | Job Title: | Rate of Pay:

Name and title of your manager: | Are you still working there? ☒ No □ Yes

Did you quit? ☒ No □ Yes
When? (dd/mm/yyyy) | Were you forced to quit? ☒ No □ Yes
When? (dd/mm/yyyy) | Were you terminated? ☒ No □ Yes
When? (dd/mm/yyyy)

If you were terminated, what reason did your employer give for your termination?

## SECTION 4: HARM SUFFERED

*If you are claiming you were denied your religious liberties, please go to Section 6

**#1 - Harassment:** Did someone at your work harass you? □ No (If no, skip to #2) □ Yes

First Date of Harassment: | Last Date of Harassment:

Who harassed you? Name _____ Title: _____

Were you harassed because of your:

□ **Age** - Date of birth: _____
□ **Pregnancy**
□ **Gender** - □ Male □ Female
□ **Sexual Orientation** - □ Actual □ Perceived
□ **Gender Identity**
□ **Religion** - Specify your closely held religious beliefs: _____
☒ **Disability**: _Deaf_____

    Briefly describe your disability and *attach the separate ADA Questionnaire. If you are claiming that your employer failed to accommodate your disability, please complete #4 below.*

□ **Race/Ethnicity:** □ Black □ Caucasian
□ Asian/Pacific Islander □ Native American
□ Other - Specify: _____
□ **Color** – Specify: _____
□ **National Origin/Ancestry:** □ Mexican □ Hispanic/Latino
□ East Indian □ Arab/ Middle Eastern
□ Other – Specify _____

How often would the harassment occur?

When was the first time it happened? | When was the last time it happened?

What was the single worst thing that the harasser did/said? (You can provide more details Section 6 below.)

Of the persons in the same or similar job as you had, who was treated *better* than you?

| Name | race/color/religion/sex/age/ national origin /disability/ sexual orientation/gender identity of that person | Job Title | Description of Treatment |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

Of the persons in the same or similar job as you had, who was treated *worse* than you?

| Name | race/color/religion/sex/age/ national origin /disability/ sexual orientation/gender identity of that person | Job Title | Description of Treatment |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

Of the persons in the same or similar job as you had, who was treated *the same as* you?

| Name | race/color/religion/sex/age/ national origin /disability/ sexual orientation/gender identity of that person identity of that person | Job Title | Description of Treatment |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**#3 – Disability Discrimination/Failure to Accommodate.** Did you ask your employer to modify your job duties, your work environment or otherwise to provide you with a reasonable accommodation for your disability? ☐ No ☒ Yes

- If you're claiming discrimination based on your disability, you must also complete an ADA Questionnaire available on the website.
- If yes, briefly describe the accommodation you were requesting and what your employer did in response.

I requested an ASL interpreter for a job interview and they told me I had to provide my own ASL interpreter.

Did you complain about the harassment? [ ] No  [ ] Yes  (If yes, please make sure to complete #4 - Retaliation below.) **Page 3 of 7**

If no, why didn't you complain? _____

If yes, who did you complain to?
Name _____ Job title _____ When _____

Briefly describe what happened because you complained. (You can provide more details in Section 6 below.

_____
_____
_____
_____

---

**#2 - Discrimination.** Were you treated differently than others around you at work? [ ] No (If no, skip to #4)  [ ] Yes

Protected Class. You must claim that you were discriminated against/treated differently because you belong to at least one of the following protected classes. Were you treated differently because of your: (check all that apply)

[ ] **Age** - Date of birth: _____

[ ] **Pregnancy**

[ ] **Gender** - [ ] Male  [ ] Female

[ ] **Sexual Orientation** - [ ] Actual  [ ] Perceived

[ ] **Gender Identity** - [ ] Refused Accommodation

[ ] **Religion** - Specify your closely held religious beliefs: _____
  [ ] Refused Accommodation

[✗] **Disability:** _Deaf_

  Briefly describe your disability and _attach the separate ADA Questionnaire. If you are claiming that your employer failed accommodate your disability, please complete #4 below._

[ ] **Race/Ethnicity:** [ ] Black  [ ] Caucasian
  [ ] Asian/Pacific Islander  [ ] Native American
  [ ] Other - Specify: _____

[ ] **Color** – Specify: _____

[ ] **National Origin/Ancestry:** [ ] Mexican  [ ] Hispanic/Latino
  [ ] East Indian  [ ] Arab/ Middle Eastern
  [ ] Other – Specify _____

How were you treated differently?

[ ] Terminated  Date: _____   [ ] Constructively Discharged   Date: _____
[ ] Laid Off  Date: _____   _(things were so bad you felt like you had to resign)_
[ ] Not Promoted  Date: _____   [ ] Terms and conditions _(work hours, etc.)_   Date: _____
[ ] Suspended  Date: _____   [ ] Disciplined   Date(s): _____

What reasons (if any) were given to you for the acts you consider discriminatory? By whom? Their job title?
_Company refused to provide ASL interpreter for job_
_Interview!_
_____
_____
_____

**#4 - Retaliation.** Did you complain to your employer about discrimination/harassment? ☐ No  ☐ Yes
(Please note that the Division can only investigate claims of retaliation where you specifically complained of or opposed discrimination)

| Date you complained: (mm/dd/yyyy) _____ | Who did you complain to? Name: _____  Job Title: _____ |
|---|---|

You complained of Harassment based on:

☐ Age            ☐ Religion
☐ Pregnancy      ☐ Disability
☐ Gender         ☐ Race/Ethnicity
☐ Sexual Orientation  ☐ Color
☐ Gender Identity     ☐ National Origin/Ancestry

You complained of Discrimination based on:

☐ Age            ☐ Religion
☐ Pregnancy      ☐ Disability
☐ Gender         ☐ Race/Ethnicity
☐ Sexual Orientation  ☐ Color
☐ Gender Identity     ☐ National Origin/Ancestry

Please summarize the complaint you made.  (You can provide more details in Section 6 below.) *You must have complained about discrimination and/or harassment based on age (over 40), race, national origin, disability, religion, gender, sexual orientation or gender identity to be protected by the anti-retaliation provision of the law)*

_____
_____

Briefly describe whatever harm happened to you after you complained. (You can provide more details in Section 6 below.)

_____
_____
_____
_____

**#5 – What relief are you seeking?** i.e. back wages, reinstatement, or other. (please specify)

_____
_____
_____
_____

[Continue on Page 6]

**#1 - In the workplace**

a.  My religious and/or moral belief is _____

b.  I expressed this belief in my workplace on _____

c.  The way I expressed this belief was to _____
    
    *(what did you do)*

d.  My employer would not let me express this belief when on _____ an employee _____ *(date of*
    
    *harm(s)      (name and job title)*
    
    did the following to prevent me from expressing my beliefs:
    
    _____

**#2 - Outside of the workplace**

a.  I have the following ☐ religious belief of _____
    
    *(identify belief)*
    
    ☐ moral belief of _____
    
    *(identify belief)*
    
    ☐ political conviction of _____
    
    *(identify belief)*

b.  I expressed this on _____ _____
    
    *(date of expression)         (where, when and how)*

c.  My employer, specifically _____
    
    *(name of individual and job title who was aware of the expression of your belief)* was aware that I did this.

d.  On _____ I was ☐ demoted
    
    *(date)* ☐
    
    ☐ ☐ terminated
    
    ☐ harassed by_____
    
    ☐ other_____
    
    *(please specify)*

I believe my employer did the above action(s) for expressing these beliefs. Please tell us what happened.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Please provide any additional details regarding the circumstances of your discrimination and/or harassment that you have alleged above. Continue your story on a separate sheet of paper if needed, and please provide a chronology if possible.

Please attach **copies** of any documents that you believe support your claim of discrimination and/or harassment.

Friend told me about this driver/Delivery Job
and I apply through onlie and friend gave me this
Email to Direct to the Boss and I email him
about this job then yun I got
Email back n accept date of interview and
I email back to him request for an ASL Interpreted
that when I Recived email w/ tell me I have
to bring my own interpreta be I want that job
So I willn be his safe my frielel told me
her Daughtel interpreta fr him so she who s
16 years old willing to interpreta but she was
terrible at it. also Boss said will email w/ me
all ppn work and set date fe Driv test but
notle hear from them fe 3 weeks now.
I work 2 Driil job Uber and pizeanship Delivery
before I have expriec w/ Delivery and Drive.

In submitting this form, you agree to advise the Division of any change in your address and/or telephone number. You also agree to notify the Division in writing if your legal representation changes during the course of the Investigation.  Such notice must be sent directly to the Case Manager or the Director, in care of the Division. Failure to cooperate may result in the dismissal of the charge or issuance of findings based on the information contained in the file.

In submitting this form you also understand that this does not constitute a Charge of Discrimination and that any Charge of Discrimination must be signed, notarized and filed with the Division no more than 180 days after the last "date of harm."

10/16/17
Date

Rob Shepson
Charging Party's signature

Exhibit #2

For Internal use only.
Inv. _____

Case #. _____
revised 2/12

# DISABILITY QUESTIONNAIRE
## UTAH ANTIDISCRIMINATION & LABOR DIVISION
### Employment Discrimination
### 160 East 300 South 3rd Floor
### PO Box 146630
### Salt Lake City, Utah 84113-6630
### Email: discrimination@utah.gov

*AN INDIVIDUAL WITH A PROTECTED DISABILITY is a person who: (1) has a long-duration physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; (3) is regarded as having such an impairment.*

**If you believe you have been discriminated against because of a DISABILITY, we will need additional information from you. Please answer this Disability Questionnaire and return it <u>with</u> the General Intake Questionnaire. You <u>must</u> provide an answer or indicate "not applicable" to each question. Please also provide any documents that support your answers below.**

**Your Name:** Robin Thompson

**The name of the employer you are filing against:** Salt Lake Trucking Group

1. Describe your physical and/or mental condition which you believe is a disability. Provide a medical name, if known, as well as a general description of each disability, in non-medical terms.

Deaf ASL User

2. Describe how your daily life, including your ability to work is affected by your physical/mental limitations: i.e. fine motor skills, mobility, vision, hearing, reasoning, thought process, interaction or communication with others, caring for oneself, ability to learn or adapt, manual labor restrictions, ability to sleep, etc.

I can do all like hearing except hear.

3. Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?

N/A

4. When was the limitation(s) or disability first diagnosed?

6 months old

1

5. How long has the limitation(s) or disability lasted or is expected to last?

_6 month to now_

6. Explain how the particular limitation affects your ability to perform your job in question.

_Communicate Issue when they want manager to communicate through text/vp/writing etc_

7. Describe any restrictions placed on you by your physician or mental health care provider because of your disability.

_They often want hire deaf think Deaf's lost talent then hearing or to lazy to try to communicate w/ Deaf people_

8. If your physician recommended that you be placed on "light duty," what type of light duty did you do or could you have done for this employer?

_N/A_

9. How long did you or your physician expect you to be on light duty?

_N/A_

10. Because of your disability, did you need a leave of absence? If so for how long?

_N/A_

11. Because of your disability, did you need to take time off work, if so, for how long and for what reason?

_N/A_

12. Was your employer made aware of your limitations and/or disability that you identified in your response to the above questions? If so, describe who knew, when they knew, what you told them about your limitations and if they took any action in response to your limitations and/or disability.

_Already info him that I'm deaf will need interpret for interview and training only._

13. Please describe your job duties:

_Drive Delivery package all day till Empty van about parcel 140 a day_

14. Do (or did) you require a reasonable accommodation in order to perform the job in question? If yes, explain in detail.

*A reasonable accommodation may mean modification to job duties, equipment modification, schedule change or reassignment to a vacant position.*

yes I ask for asl interpreter and he said I need to bring my own interpreter in a mall.

15. Have you asked for a reasonable accommodation for your disability? (see above definition) If yes, describe the circumstances. Include dates, names, titles, and type of actions or responses.

yes that I'm deaf that I ask for interpreter for interview through Email

16. Provide any names and phone numbers of witnesses to your requests for reasonable accommodation, denial to your request(s), or request(s) not being acted upon.

See Email Conversation

17. What major functions/parts of the job can you perform without a reasonable accommodation?

only need interpreter for interview and training

18. Have any co-workers or supervisors made negative comments concerning your disability? If so, provide their name(s), title(s), comments made, and date.  Include witnesses to these comments, if any.

Dan Donnel and Andrew

19. Do you believe that you were treated differently from other employees because of your disability? If so, how? And by whom?

yes hearing people don't need interpreter but Deaf do?

3

20. Can you provide copies of written records regarding any request you made to your employer for reasonable accommodation and/or the denial of any reasonable accommodation?

_Email_

21. Do you believe that you were treated differently by any other employees because of your disability?  If so, how, when and by whom?

_Deaf dont have same access as hearing people do_

**Please feel free to provide any additional information you may deem relevant to your disability case including documents.**

4

# Exhibit #3

Law Offices of
# JARED M. ALLEBEST
8978 South Quarry Stone Way Sandy Utah 84094 | 949.322.3991 | jared@allebest.com

October 20th, 2017

Utah Antidiscrimination & Labor Division
Employment Discrimination
160 East 300 South, 3rd Floor
PO Box 146630
Salt Lake City Utah 84114-6630

Re: Letter of Representation of Robin Thompson

To Whom It May Concern:

I'm an attorney representing Robin Thompson in the matter regarding employment discrimination against Salt Lake Trucking Group. I am submitting these documents on behalf of Mr. Thompson. Please dual file this complaint with the Equal Employment Opportunity Commission (EEOC).

## *Statement of Facts*

Mr. Thompson was encouraged to apply at Salt Lake Trucking Group by a friend named Coralynn Henson. He applied for the position. He applied online for the position of OTR Truck Driver.

On September 23rd, 2017, Mr. Thompson sent an email to Dan Donne asking for an American Sign Language (ASL) interpreter for the job interview that was scheduled on September 26th, 2017. Mr. Thompson's request reads, "I will see you this Tuesday 5:30pm and I forgot to add I will need an ASL Interpreter for that interview too. Hope thats not problem for you?"

Mr. Donne responded to Mr. Thompson's request for an ASL interpreter by telling that "you are applying for a job. We are not reaching out to you specifically to say come work for us. You reach to us for this job. If you need an interpreter you need to provide one and bring them with you. Things would be different if we sought you out personally." In another email, Mr. Donne told him that "If you need an interpreter you need to make Provisions yourself."

Coralynn Henson sent an email to Mr. Thompson reminding him to tell Dan that he was bringing Ms. Henson's 16 year old daughter to interpret for him at the interview. Ms. Henson's email reads, "Just a reminder to let Dan know that

1

you're bring your friend's daughter who already did help out the last time." Ms. Henson used her own 16 year old daughter to interpret for her own job interview with Salt Lake Trucking Group.

Mr. Thompson had an interview with an individual named Andrew on September 26th. An ASL interpreter was not present at that interview because Salt Lake Trucking Group did not provide one. Mr. Thompson used Ms. Henson's 16 year old daughter to interpret for him at that interview Mr. Thompson followed up with Mr. Donne asking for paperwork because he was eager to start work immediately. Mr. Thompson never heard back from Mr. Donne or anyone else at Salt Lake Trucking Group.

### *Title I of the Americans with Disabilities Act*

Under the Title I of the Americans with Disabilities Act (ADA), a covered entity is defined to mean an "employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111 (2). An employer is defined as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person, except that, for two years following the effective date of this subchapter, an employer means a person engaged in an industry affecting commerce who has 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year, and any agent of such person."  42 U.S.C. § 12111 (5)(A). The ADA clearly applies to ROM Corporation because it is a covered entity that has more than 15 employees who are employed at your organization.

Since the ADA applies to your organization, a covered entity "shall not discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112 (a). That means that a covered entity cannot refuse "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112 (5)(A). It also means that a denial of "employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant" may also be a basis for discrimination. 42 U.S.C. § 12112 (5)(B).

Title I of the ADA defines disability to mean that an individual has a "physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102 (1)(A-C). A major life activity "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102 (2)(A). My client is Deaf since he has a physical impairment that substantially limits the major life activity of hearing. As a result, he is protected under the ADA from discrimination on the basis of his disability.

Under Title I of the ADA, a reasonable accommodation means to make "existing facilities used by employees readily accessible to and usable by individuals with disabilities" and provide "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations." 42 U.S.C. § 12111 (9)(A-B).

According to the "EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act"[1], the EEOC notes that "requests for reasonable accommodation do not need to be in writing. Individuals may request accommodations in conversation or may use any other mode of communication."[2]

The EEOC further explains in a footnote that "although individuals with disabilities are not required to keep records, they may find it useful to document requests for reasonable accommodation in the event there is a dispute about whether or when they requested accommodation. Employers, however, must keep all employment records, including records of requests for reasonable

---

[1] "Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act.", Equal Employment Opportunity Commission, 17 Oct. 2002, www.eeoc.gov/policy/docs/accommodation.html#requesting. Accessed 25 Sept. 2017. See, e.g., *Schmidt v. Safeway Inc.*, 864 F. Supp. 991, 997, 3 AD Cas. (BNA) 1141, 1146-47 (D. Or. 1994) ("statute does not require the plaintiff to speak any magic words. . . The employee need not mention the ADA or even the term 'accommodation.'"). See also *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 694, 8 AD Cas. (BNA) 875, 882 (7th Cir. 1998) ("[a] request as straightforward as asking for continued employment is a sufficient request for accommodation"); *Bultemeyer v. Ft. Wayne Community Schs.,* 100 F.3d 1281, 1285, 6 AD Cas. (BNA) 67, 71 (7th Cir. 1996) (an employee with a known psychiatric disability requested reasonable accommodation by stating that he could not do a particular job and by submitting a note from his psychiatrist); *McGinnis v. Wonder Chemical Co.*, 5 AD Cas. (BNA) 219 (E.D. Pa. 1995) (employer on notice that accommodation had been requested because: (1) employee told supervisor that his pain prevented him from working and (2) employee had requested leave under the Family and Medical Leave Act).

[2] Id.

accommodation, for one year from the making of the record or the personnel action involved, whichever occurs later. If a charge is filed, records must be preserved until the charge is resolved. 29 C.F.R. § 1602.14 (1997)."[3] OSF did not comply with the EEOC requirement to keep records of Aaron's written accommodation request since all conversations were wiped away on that white eraser board.

ADA regulatory guidance states that "although in some circumstances a notepad and written materials may be sufficient to permit effective communication, in other circumstances they may not be sufficient. For example, a qualified interpreter may be necessary when the information being communicated is complex, or is exchanged for a lengthy period of time. Generally, factors to be considered in determining whether an interpreter is required include the context in which the communication is taking place, the number of people involved, and the importance of the communication."[4]

According to the "EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act", the EEOC explains that "when an individual decides to request accommodation, the individual or his/her representative must let the employer know that s/he needs an adjustment or change at work for a reason related to a medical condition. To request accommodation, an individual may use "plain English" and need not mention the ADA or use the phrase "reasonable accommodation."" The EEOC also explains that "a family member, friend, health professional, or other representative may request a reasonable accommodation on behalf of an individual with a disability."

The ADA recognizes that ASL interpreters are auxiliary aids and services that a covered entity must provide to their employees when requested or offered to the employee. The term "auxiliary aids and services" means "qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments; qualified readers, taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments; acquisition or modification of equipment or devices; and other similar services and actions." 42 U.S.C. § 12103(1)(A-D).

Although ASL interpreters are not defined under Title I of the ADA, they are defined under Title II and III. A qualified interpreter means an "interpreter who, via a video remote interpreting (VRI) service or an on-site appearance, is able to interpret effectively, accurately, and impartially, both receptively and

---

[3] Id.
[4] *Duffy v. Riveland*, 98 F.3d 447, 456 (9th Cir.1996) (quoting 28 C.F.R. Part 35, App. A).

expressively, using any necessary specialized vocabulary. Qualified interpreters include, for example, sign language interpreters, oral transliterators, and cued-language transliterators."[5]

Moreover, there is no prohibition on requiring an individual with a disability to bring another individual or minor child to interpret for that person under Title I of the ADA, it is forbidden under Title II and III.[6]

Courts and administrative agencies frequently look elsewhere in other federal or state legislative texts for help in interpreting a text or statue. Thus, the definition of a qualified interpreter or the prohibition on bringing another person or minor to interpret for person with a disability would be helpful where a request for an ASL interpreter is in dispute under Title I of the ADA.

A request for a certified and qualified ASL interpreter was not a direct threat to Salt Lake Trucking Group because there is no "significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. § 12111 (3).

Mr. Thompson requests did not present an undue hardship to Salt Lake Trucking Group. An undue hardship "is action requiring significant difficulty or expense, when considered in light of the factors" such as "the nature and cost of the accommodation needed under this chapter; the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility; the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity." 42 U.S.C. § 12111 (10)(A)&(B)(i-iv).

Finally, the ADA prohibits an employer from retaliating, interfering, coercing or intimidating an employee who opposed an illegal practice, has participated in an investigation, hearing proceeding, or has exercised their rights under the ADA. 42 U.S.C. § 12203 (a-b).

### *Utah State Law on ASL Interpreters*

---

[5] 28 C.F.R. § 35.104 (Title II), 28 C.F.R. § 36.104 (Title III).
[6] 28 C.F.R. § 35.160(c)(1-3) (Title II), 28 C.F.R. § 36.303(2-4) (Title III).

It is important to point out that the ADA doesn't require the ASL interpreter to be licensed and certified. It just requires them to be "qualified." Utah has recently passed a law requiring that qualified ASL interpreters must also be licensed and certified. Utah recently passed HB371 which amended Title 53A, Chapter 26a to now require interpreters to obtain state certification as American Sign Language-trained interpreters and that anyone who interprets in the state of Utah without being certified is charged with a Class B Misdemeanor.

As a result of the passage of HB371, Utah Administrative Code Rule R746-510-2, defines a "Certified Interpreter" to mean a "person who is certified as meeting the certification requirements" of the "Interpreter Services for the Hearing Impaired Act."

### *Covered Entities Are Required to Provide ASL Interpreters Under Title I of the ADA*

There are several cases where courts have held that an employer is required to provide an American Sign Language Interpreter (ASL) interpreter under Title I of the ADA and that a failure to provide an ASL interpreter is a violation of the ADA.

The 10th Circuit of Appeals held that Wal-Mart violated Title I of the ADA when it denied a Deaf employee's reasonable accommodation request in *Equal Employment Opportunity Commission v. Wal-Mart Stores, Inc.*[7] Eduardo Amaro, who is Deaf and communicates in ASL, filed a complaint with the EEOC after his employer refused to provide an ASL interpreter for company trainings and in meetings with management. The "EEOC filed suit on his behalf in October 1993, alleging disability discrimination and retaliation in violation of the ADA based on Amaro's suspension and termination. Amaro intervened, also asserting ADA claims."[8] The "jury returned a verdict for the plaintiffs, awarding Amaro $3,527.79 in compensatory damages and $75,000 in punitive damages. The district court granted Amaro's motion for attorneys' fees, awarding him a total of $41,063.72 as fees. On appeal, Wal-Mart argues against the award of punitive damages and attorneys' fees. The EEOC cross-appeals, challenging the district court's denial of its motion for equitable relief which sought to secure an injunction barring Wal-Mart from committing future violations of the ADA."[9]

One of Wal-Mart's argument on appeal was that "Wal-Mart contends that there is insufficient evidence to support a finding that Amaro's suspension and

---

[7] EEOC v. Wal-Mart Stores, Inc., 187 F.3d 1241 (10th Cir. 1999)
[8] Id at 1244.
[9] Id.

termination, even if discriminatory, were in willful disregard of his rights."[10] The 9th Circuit of Appeals rejected that argument stating that "the evidence shows that Wal-Mart knew Amaro was hearing impaired and employed him with the knowledge that in certain circumstances, including meetings and training sessions, he would need an interpreter. When Amaro refused to attend a training session which he could not understand without the aid of an interpreter, his supervisors not only failed to provide an interpreter, they transferred Amaro from his job as a Receiving Associate to a janitorial position. The next day, the supervisors again failed to provide Amaro an interpreter to discuss his transfer and, in fact, suspended him when he objected to a perceived demotion. When Wal-Mart did provide an interpreter one week later, it was to inform Amaro of his termination. The store manager, who ultimately approved Amaro's suspension, testified that he was familiar with the accommodation requirements of the ADA and its prohibition against discrimination and retaliation in the workplace. From this evidence, a reasonable jury could have concluded that Wal-Mart intentionally discriminated against Amaro in the face of a perceived risk that its action would violate federal law."[11]

The 9th Circuit of Appeals reached a similar decision in _U.S. Equal Employment Opportunity Commission v. UPS Supply Chain Solutions_[12] where a Deaf employee, Mauricio Centeno, had requested an ASL interpreter from his employer and that the employer denied his reasonable accommodation request. The EEOC "filed a complaint alleging that UPS engaged in unlawful employment practices on the basis of disability by failing to reasonably accommodate Centeno's deafness"[13] on September 28, 2006. Two years later on April 14, 2008, UPS "filed a motion for summary judgment as to all claims" and the "district court granted UPS's motion for summary judgment."[14] Later, "the district court issued its final judgment on September 18, 2008, and the EEOC filed a timely notice of appeal on November 14, 2008."[15]

The 9th Circuit Court of Appeals focused on "whether, in regard to the privileges of Centeno's employment, UPS provided reasonable accommodations to Centeno's known physical limitations."[16] UPS argued on appeal that they "reasonably accommodated Centeno because its modifications were effective."[17] The 9th Circuit rejected that argument and held that "an employer has discretion to choose among effective modifications, and need not provide the employee with

---

[10] Id.
[11] Id at 1246.
[12] _EEOC v. UPS Supply Chain Solutions_ 620 F.3d 1103 (9th Cir. 2010).
[13] Id at 1109.
[14] Id.
[15] Id at 1110.
[16] Id.
[17] Id.

the accommodation he or she requests or prefers, but an employer cannot satisfy its obligations under the ADA by providing an ineffective modification. Where, as here, there is a disputed issue of fact regarding whether the modifications the employer selected were effective, and where the trier of fact could reasonably conclude that the employer was aware or should have been aware that those modifications were not effective, summary judgment is not appropriate."[18]

In *Equal Employment Opportunity Commission v. Federal Express Corporation*,[19] a Deaf employee filed a complaint with the EEOC against his employer, FedEx, for failing to provide him with an ASL interpreter. In "July 2002, the EEOC determined that FedEx had discriminated against Lockhart by repeatedly denying him ASL translation for full participation in meetings, training, and safety and security events."[20] On "September 30, 2004, the EEOC filed its complaint against FedEx in the District of Maryland. The complaint alleged that FedEx had violated the ADA by failing to provide reasonable accommodations to Lockhart, and that FedEx had unlawfully terminated Lockhart in retaliation for the discrimination charge he filed with the EEOC."[21] At "trial, the EEOC established that Lockhart's supervisors were always aware of his disability. They were also familiar with the ADA and FedEx's obligations thereunder, but nevertheless failed to provide ASL translation assistance or other accommodations to Lockhart at employee meetings and training sessions."[22] Subsequently on March 2, 2006, the "jury returned its verdict, by way of a "Special Verdict Form," finding, inter alia, that the EEOC had proven by a preponderance of the evidence that FedEx had violated the ADA by failing to provide reasonable accommodations to Lockhart. The verdict specified that a higher management official of Federal Express acted with malice or reckless indifference to [Lockhart's] federally protected rights, and that "FedEx did not act in a good faith attempt to comply with the law by adopting policies and procedures designed to prohibit such discrimination in the workplace."[23]

In response to the jury's decision, FedEx "renewed its motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), maintaining that the evidence was insufficient to support the jury's award of punitive damages. FedEx moved in the alternative for a remittitur. The trial court denied the Rule 50 relief."[24] FedEx subsequently appealed and the 4th Circuit of Appeals held that "the trial evidence was sufficient for the jury to find, by a preponderance thereof, that a managerial official of FedEx perceived the risk that his failure to provide

---

[18] Id at 1113.
[19] EEOC v. Federal Express Corp. 513 F.3d 360 (4th Cir. 2008)
[20] *Id* at 364. Internal citations and quotations omitted.
[21] *Id.*
[22] *Id* at 365.
[23] Id at 370. Internal citations omitted.
[24] Id.

Lockhart with reasonable accommodations would contravene the ADA. Thus, the jury was entitled to find that FedEx had acted, in Kolstad's terms, with "recklessness in the subjective form."[25]

In *Lauren Searls v. John Hopkins Hospital*[26], a Deaf woman named Lauren Searls sued her employer, John Hopkins Hospital (JHH) for discriminating against her in on the basis of disability in violation of Title I of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. Ms. Searls graduated from the Johns Hopkins School of Nursing in 2012. She received an email from JHH that gave her advanced notice that there would be two job openings at the hospital. She "applied for the Nurse Clinician I position, and JHH offered her an interview."[27] She was offered the position on the day after the interview and accepted it. She requested an ASL interpreter and the hospital denied her request citing the cost of having an ASL interpreter accompany her throughout the day and that it would be an undue hardship for JHH to provide an ASL interpreter for her. JHH subsequently rescinded the job offer on the basis that they couldn't provide the requested accommodation due to cost. Ms. Searls found employment elsewhere as a nurse at the "University of Rochester Medical Center's Strong Memorial Hospital ("Strong"), where she continues to work today. After Strong offered her the job, Searls requested a full-time ASL interpreter. Strong agreed, and since January 2013, Searls has worked with an ASL interpreter."[28]

The parties at trial disputed "whether Searls' request for a full-time accommodation was reasonable"[29] but agreed that "Searls could not have performed these essential functions without an accommodation"[30] but they could not agree on "whether providing an ASL interpreter would have reallocated these duties."[31]

The Court found that "Searls' case is distinguishable from other cases where providing the requested accommodation amounted to reallocating essential job functions. In those cases, the accommodation request was found unreasonable because the employee requested that another employee perform the entirety of an essential job function, leaving the employee with no portion of the essential job function to perform."[32] In contrast to those cases, "even with the assistance of an ASL interpreter, Searls would perform a significant portion of the essential job functions of communicating and responding to alarms herself: Searls would decide

---

[25] *Id* at 374.
[26] Lauren Searls v. John Hopkins Hospital 158 F.Supp.3d 427 (D.Md. 2016)
[27] Id at 431.
[28] Id at 433.
[29] Id at 435.
[30] Id.
[31] Id at 436.
[32] Id.

which questions to ask, she would voice for herself in speaking to patients and other professionals, and she would act in response to alarms. An interpreter, lacking the requisite medical training, could not act independently of Searls to communicate about patient care and respond to alarms."[33]

Thus, "with the aid of an interpreter, Searls could perform a substantial portion of the essential job functions of communicating and responding to alarms - most importantly, those portions requiring nursing judgment -- so that her inability to hear did not detrimentally affect the purpose of employing her as a nurse. A nurse's duties with respect to communicating and responding to alarms go beyond hearing what patients are saying and hearing an alarm ringing. Searls would have used her own medical expertise and training when speaking to patients, families, and other hospital personnel; providing care based on her exchanges with patients; and taking the appropriate action in response to an alarm after an interpreter communicated the sound of an alarm visually. Therefore, Searls' accommodation request would not have reallocated the essential job functions of communicating with others and responding to alarms. Searls' request for a full-time ASL interpreter was reasonable, and Searls has established a prima facie case of disability discrimination."[34]

Based on the above cases, it is clear that an employer may be required to provide an ASL interpreter under Title I of the ADA and that a failure to provide an ASL interpreter is a violation of the ADA.

## *Conclusion*

Mr. Thompson made a reasonable accommodation request for an ASL interpreter and that request was denied by Mr. Donne on behalf of the Salt Lake Trucking Group and allowing Mr. Thompson to bring a 16 year old girl to interpret for him at the interview. Moreover, it appears that Salt Lake Trucking Group may have also violated the Title I of the ADA by allowing Ms. Henson to bring her own 16 year old daughter to her own job interview with Salt Lake Trucking Group. It is troubling that Salt Lake Trucking Group would allow a 16 year old girl to interpret for two separate Deaf applicants. Finally, Mr. Thompson may have been denied employment by reason of his Deafness.

---

[33] Id at 437.
[34] Id at 437.

Sincerely,


Jared Allebest, Esq.

cc: Robin Thompson

Exhibit #4



**Labor Commission**
JACESON R. MAUGHAN
*Commissioner*

KENDRA L. SHIREY
*Director*

**State of Utah**
GARY R. HERBERT
*Governor*
SPENCER J. COX
*Lt. Governor*

**Robin Thompson,**

 Charging Party,

vs.

**Salt Lake Trucking Group LLC,**

 Respondent.

**DETERMINATION**

**AND**

**ORDER**

**UALD NO.** B8-0080

**EEOC NO.** 35C-2018-00080

## DETERMINATION

Having reviewed the evidence provided, the Utah Antidiscrimination and Labor Division (the "Division"), under the authority established in the Utah Antidiscrimination Act, Utah Code §34A-5-101 to -112 (2017) (the "Act"), issues the following Determination and Order as to the merits of the subject charge.

## I. JURISDICTION

To establish jurisdiction, Robin Thompson ("Charging Party") must show that Salt Lake Trucking Group LLC ("Respondent") employed 15 or more employees in 20 or more weeks of the current year, and that he filed this complaint within 180 days from the date of the last alleged harm. The Division interviewed Andrew Glancy ("Glancy"), the general manager for Respondent, who stated that Respondent does not have any employees. However, Glancy admitted that he is the general manager for a handful of companies. Therefore, the Division turns to the integrated enterprise test.

Under the integrated enterprise test, the following four factors are considered: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. *Evans v. McDonald's Corp.,* 936 F.2d 1087, 1089 (10th Cir.1991).

Glancy stated that Respondent is used as a brand entity for the trucking companies that he manages, and that he uses Respondent as the face for three trucking companies. The Division finds, based on Glancy's admissions, that Respondent and FTA Transport are integrated entities in that Glancy stated they have common management, ownership, and financial control, and Respondent exists as a public face for FTA Transport. The Division also notes that Charging

Robin Thompson
Determination & Order
Page -2-

Party filed this complaint within 180 days from the date of the last alleged harm.  Thus, all jurisdictional requirements have been met as required by the Act.

The Division will consider for its determination all events that occurred between the date of filing and May 18, 2017, the 180-day jurisdictional mark. The Division will treat all other prior events as being untimely.  However, such events may be given weight for evidentiary purposes.

On November 14, 2017, Charging Party alleged that Respondent discriminated against him based on his disability.  Respondent denies Charging Party was subject to discrimination and states that it failed to hire Charging Party because of his behavior during his job interview on September 26, 2017.

## II.  SUMMARY OF INVESTIGATION

The Division investigated all of Charging Party's allegations made against Respondent that he considered to be discriminatory.  This determination is based on whether or not, after the investigation, there was sufficient evidence to show that illegal discrimination occurred.  We conclude that there is sufficient evidence to support Charging Party's charge.

Charging Party is deaf, and applied for a position as a truck driver with Respondent in September 2017. He was schedule for an interview on September 26, 2017, and sent an e-mail to Glancy on September 23, 2017 requesting an interpreter. In Glancy's response he denied the request. Charging Party provided a copy of this e-mail chain to the Division. Charging Party states that he was forced to use his own interpreter for the job interview, and further states that because the interpreter was not certified, he was poorly represented during the interview. Specifically he claims that the interpreter argued with Glancy during the interview, and attempted to negotiate wages for Charging Party, rather than acting strictly as an interpreter. He claims that he was not hired because of his disability.

Respondent denies that Charging Party was subject to discrimination. It states that Charging Party was not hired because of how he behaved in the interview. It also claims that it hired a deaf individual the week before Charging Party was interviewed.

## III.  ANALYSIS

A.    Charging Party Failed to Show that Respondent Refused to Hire Him Because of His Disability.

Robin Thompson
Determination & Order
Page -3-

I.      Charging Party Establishes His Prima Facie Case of Disability Discrimination.

To establish a case of failure to hire based on disability, Charging Party must establish that: (1) he is a member of a protected class; (2) he applied for a position with Respondent; (3) he is qualified for the position for which he applied; and (4) the position was filled by someone not of Charging Party's protected class.

Charging Party is deaf, and a member of the protected class. It is not disputed that he applied for, and was interviewed for, a truck driving position with Respondent in September 2017. It is not disputed that he was qualified for the position.

To establish the fourth element, Charging Party must show that the position was filled by someone not of Charging Party's protected class. For the purposes of this determination, the Division finds that the position was filled by someone not of Charging Party's protected class. Charging Party has established his prima facie case. Once Charging Party establishes a case of discrimination, the burden shifts to Respondent to articulate a legitimate, non-discriminatory reason for its action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

II.      Respondent Articulated a Legitimate Non-discriminatory Reason for Its Action.

Respondent states that Charging Party was not hired because he "did not show a motivation for the position, was not professional or courteous in the interview, and did not display a work ethic that would enable him to perform the essential functions of the position," during the interview. Respondent has met its burden to articulate a legitimate, non-discriminatory reason for its action.

III.     Respondent Articulated a Legitimate Non-discriminatory Reason for Its Action.

Once Respondent articulates a legitimate, non-discriminatory reason for its actions, the burden shifts back to Charging Party to show the articulated reason is a pretext. Pretext may be demonstrated by showing: (1) it is more likely than not Respondent's actions were motivated by a discriminatory reason; or (2) Respondent's articulated reason is not credible. *Bertsch v. Overstock.com*, 2014 U.S. Dist. LEXIS 165159, 47-48 (D. Utah Nov. 24, 2014).

Charging Party claims that Respondent's decision to not hire him was because of his disability, and also claims that Respondent's stated reason of his poor behavior in the interview is not credible. Charging Party states that the individual who interpreted for him during the interview was not professional, disclosed things she should not have disclosed about Charging Party, and when Charging Party was asked about what he expected to make, the interpreter started arguing with the interviewer about what was fair compensation. The Division finds that this evidence is insufficient to establish pretext. Further, Respondent provided evidence showing that it hired a

Robin Thompson
Determination & Order
Page -4-

deaf individual the week before Charging Party. Charging Party failed to establish pretext, and therefore his failure to hire claim must fail.

B.      Charging Party Was Denied Reasonable Accommodation.

To establish a claim of failure to accommodate, Charging Party must show that: (1) he is disabled as defined by the ADA, (2) he is "otherwise qualified" to do the job, and (3) he requested a "plausibly reasonable accommodation." *See Kohl v. Burbank*, 2018 U.S. Dist. LEXIS 104977, 17. If the employee satisfies that burden, the court determines whether the employer has presented evidence "'either (1) conclusively rebutting one or more elements of [the employee's] prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer.'" *Id.*

The Division has previously found that Charging Party is disabled as defined by the ADA, and that he was otherwise qualified to do the job. To establish the third element, Charging Party must show that he requested a plausibly reasonable accommodation. The ADA provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. 12112(a)

He claims that he requested the plausibly reasonable accommodation of having an interpreter in an e-mail to Glancy on September 23, 2017. Charging Party submitted an e-mail chain between himself and Glancy to verify this allegation, and the evidence supports his claim. The Division finds that he has met the third element.

Once Charging Party establishes the above elements, Respondent must show some kind of evidence rebutting one or more elements of Charging Party's prima facie case or establish an affirmative defense. The evidence shows that Glancy told Charging Party that Respondent was not required to provide an interpreter because he, Charging Party, had applied for the job and had not been sought out. Respondent failed to rebut Charging Party's prima facie case or even assert an affirmative defense. Therefore the Division finds that Charging Party has established his prima facie case of failure to accommodate and his claim must prevail.

Robin Thompson
Determination & Order
Page -5-

## IV. CONCLUSION

The Division concludes that there is **REASONABLE CAUSE** to believe it was more likely than not that Respondent failed to accommodate him.

### ORDER

IT IS THEREFORE ORDERED that Respondent shall provide the following relief to Charging Party:

1.  Respondent shall compensate Charging Party $1.

3.  Respondent shall compensate Charging Party for the payment of associated attorney fees. As of September 24, 2018, this has been computed at $5,000;

4.  Respondent shall implement or monitor existing policies to prevent any future occurrence of discriminatory activity;

5.  Respondent shall not retaliate against Charging Party for having exercised his right to file this request for agency action; and

6.  Respondent shall provide proof of discrimination training for relevant employees to the Division within 45 days of the date this order is signed.

Respondent's failure to comply with the Division's order in this matter may result in the commencement of a civil enforcement action.


RECOMMENDED BY:

_____        _____
Michael Barrett, Investigator                                        Date

ISSUED BY:

_____        _____
Kendra L. Shirey, Director                                           Date

Robin Thompson
Determination & Order
Page -6-

## APPEAL RIGHTS

**UTAH ANTIDISCRIMINATION & LABOR DIVISION (UALD) (State Administrative Agency):**  Either party may appeal this Determination and Order ("Order"), by submitting a written request for a formal evidentiary hearing to review de novo the Order with the Division of Adjudication ("Adjudication"). See Utah Code §34A-5-107(4c) or 5(c). This request must be **received** by Adjudication within thirty (30) days from the date of the issuance of this Order. See *id.* If a timely appeal is not received by Adjudication, this Order becomes the final order of the Commission.

The Notice of Appeal **MUST** include the following information (See R602-7-3(1)(iii)(A-D)):

1. The name, mailing address, and telephone number of the party seeking the de novo review, and his attorney's name, if applicable;

2. The name, mailing address, and telephone number of the opposing parties and their attorneys, if applicable;

3. The date that the Division's Determination and Order was issued;

4. A request for relief, specifying the type and extent of relief requested, and a statement of facts supporting the requested relief.

The request should be submitted electronically to casefiling@utah.gov. In the alternative, it can be mailed or hand delivered to:

Division of Adjudication
Utah Labor Commission
160 E 300 S. Third Floor
PO Box 146615
Salt Lake City, UT 84114-6615
Fax:  (801) 530-6333

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (EEOC) (Federal Administrative Agency) review:**   The Charging Party may request a Substantial Weight Review by the Equal Employment Opportunity Commission by notifying the following within fifteen (15) days of the date this Order becomes a final action of the Utah Labor Commission:

Ms. Pam Pershing - State & Local Coordinator
Equal Employment Opportunity Commission
3300 N Central Avenue, Suite 690
Phoenix, AZ 85012

Robin Thompson
Determination & Order
Page -7-

If both a Request for a Formal Evidentiary Hearing is requested and a Substantial Weight Review from EEOC is requested, EEOC will conduct its Substantial Weight Review after all of the state administrative proceedings have been concluded.

**REQUEST FOR NOTICE OF RIGHT TO SUE:**  The Charging Party may also withdraw their complaint from the Division and request a Right to Sue Notice from the Equal Employment Opportunity Commission in order to pursue the case in federal court.  This form is available through the Division.

Robin Thompson
Determination & Order
Page -8-

## DERECHOS PARA APELAR

**LA DIVISIÓN DE ANTIDISCRIMINACIÓN Y LABOR DE UTAH (UALD) (La Agencia Administrativa del Estado de Utah):** Cualquiera de los participantes pueden apelar esta Orden. Necesita presentar una solicitud por escrito y pedir una "audiencia formal" para una revision *de novo* del orden a la division de adjudicacion ("adjudicacion"). Ve Utah Code §34A-5-107(4c) o 5(c). Esta solicitud debe ser recibida por adjudicacion dentro de los treinta (30) días siguientes de la fecha final de esta orden. Si no la recibe adjudicacion, este orden sera el orden final de la comision.

La solicitud para apelar debe de incluir la siguiente informacion (Ve R602-7-3(1)(iii)(A-D))::

1.  El nombre, domicilio, y numero telefónico de la persona que esta pidiendo la revision de novo, y el nombre y domicilio de su Representante Legal, si tiene uno;

2.  El nombre, domicilio, y numero telefónico de la parte contraria y su Representante Legal, si tiene uno;

3.  La fecha cuando la división emitió la Determinación y Orden;

4.  Una petición de alivio, especificando la clase y plazo del alivio pedido, y una declaración de los hechos que apoyan el alivio pedido.

La solicitud debe ser enviada por correo electrónico a: caseefiling@utah.gov. Como alternativa, se puede mandarlo por correo o traerlo en mano a:

Division of Adjudication
Utah Labor Commission
160 E 300 S. Third Floor
PO Box 146615
Salt Lake City, UT 84114-6615
Fax:  (801) 530-6333

**COMISIÓN DE IGUALDAD EN EL EMPLEO (EEOC) (La Agencia Administrativa Federal):** La entidad acusatoria puede pedir una Revision de Carga Sustancial a la Comisión de Igualdad en el Empleo notificando dentro de quince (15) dias siguientes de la fecha en que esta orden se vuelve la acción final de la Comisión Laboral de Utah.  La solicitud debe ser enviada a:

Ms. Pam Pershing - State & Local Coordinator
Equal Employment Opportunity Commission

Robin Thompson
Determination & Order
Page -9-

3300 N Central Avenue, Suite 690
Phoenix, AZ 85012

Si ambas audiencias son solicitadas, la Audiencia Formal de Evidencia y la Petición para una Revisión de Cargo Substancial de la Comision de Igualdad en el Empleo, el EEOC conducirá su revisión después de que todos los procedimientos administrativos estatales sean concluidos.

**PETICIÓN DE CARTA CON DERECHO A DEMANDAR:**   La entidad acusatoria también puede retirar su demanda con la División y pedir una carta de demanda a la Comisión de Igualdad en el Empleo para poder abrir el caso en la Corte Federal.  Esta carta se encuentra en la División.

Exhibit #5

# JARED ALLEBEST

8978 South Quarry Stone Way Sandy, Utah 84094 | 949.322.3991 | jared@allebest.com

November 29, 2018

Division of Adjudication
Utah Labor Division
160 East 300 South, 3rd Floor
PO Box 146615
Salt Lake City, Utah 84114-6615
Email: casefiling@utah.gov

Ms. Pam Pershing
State & Local Coordinator
Equal Employment Opportunity Commission
3300 North Central Avenue, Suite 690
Phoenix, Arizona 85012

Re:   NOTICE OF APPEAL (Thompson v. Salt Lake Driving Company UALD NO. B8-OO8O & EEOC NO. 35C-201 8-00080).

To Whom It May Concern,

    This letter serves as our appeal to the Utah Antidiscrimination & Labor Division (UALD) Determination and Order which was issued on November 9th, 2018. We are submitting a written request a formal evidentiary hearing to review de novo the Order with the Division of Adjudication. (See Utah Code 34A-5-107(4c) or 5(c). We also request a Substantial Weight Review from the EEOC.

    As required by R602-7-3(1)(iii)(A-D)), we are submitting the following information:

1. _Name, Address and Telephone Number of Party Seeking De Novo Review._

Robin Thompson
3698 N 2175 E
Layton, UT 84040
(801) 203 3741 (VP)

Jared Allebest
Attorney for Mr. Thompson
Allebest Law Group
8978 South Quarry Stone Way
Sandy Utah 84094

2. _Name, Mailing Address and Telephone Number of Opposing Parties and Their Attorneys._

1

Andrew Glancy
Salt Lake Trucking Group, LLC
5745 W 300 S
Salt Lake City, UT 84104

Andrew Glancy
FTA Transport, Inc
5745 W 200 S
Salt Lake City, UT 84104

3. _Date of UALD's Determination and Order Was Issued_: June 29th, 2018.

4. _A Request of Relief_: See below.

## REQUEST FOR RELIEF

Mr. Thompson requests a complete review of his claims against Salt Lake Trucking Group, LLC and FTA Transport, Inc. Additionally, we request that a qualified and certified American Sign Language interpreter(s) be present for any hearings or meetings that Mr. Thompson must attend as part of the de novo review by the UALD Division of Adjudication and/or from the EEOC's Substantial Weight Review.

Mr. Thompson requests an opportunity to present his case in person with his attorney along with supporting documents, evidence and/or witnesses. Mr. Thompson feels that the UALD's Determination and Order was decided incorrectly because he is confident that he can meet all of the elements of his claim of discrimination. He feels that he has the sufficient evidence in the form of documents and witnesses to support his claims.

Finally, Mr. Thompson requests that the UALD submit a finding that there is **Reasonable Cause** to believe that the Respondent discriminated against the Charging Party and to award him a sum higher than a de minimis award of $1.

### _Statement of Facts_

Mr. Thompson was encouraged to apply at Salt Lake Trucking Group by a friend named Coralynn Henson. He applied for the position. He applied online for the position of OTR Truck Driver.

On September 23rd, 2017, Mr. Thompson sent an email to Dan Donne asking for an American Sign Language (ASL) interpreter for the job interview that was scheduled on September 26th, 2017. Mr. Thompson's request reads, "I will see you this Tuesday 5:30pm and I forgot to add I will need an ASL Interpreter for that interview too. Hope thats not problem for you?"

2

Mr. Donne responded to Mr. Thompson's request for an ASL interpreter by telling that "you are applying for a job. We are not reaching out to you specifically to say come work for us. You reach to us for this job. If you need an interpreter you need to provide one and bring them with you. Things would be different if we sought you out personally." In another email, Mr. Donne told him that "If you need an interpreter you need to make Provisions yourself."

Coralynn Henson sent an email to Mr. Thompson reminding him to tell Dan that he was bringing Ms. Henson's 16 year old daughter to interpret for him at the interview. Ms. Henson's email reads, "Just a reminder to let Dan know that you're bring your friend's daughter who already did help out the last time." Ms. Henson used her own 16 year old daughter to interpret for her own job interview with Salt Lake Trucking Group.

Mr. Thompson had an interview with an individual named Andrew on September 26th, 2017. An ASL interpreter was not present at that interview because Salt Lake Trucking Group did not provide one. Mr. Thompson used Ms. Henson's 16 year old daughter to interpret for him at that interview. Mr. Thompson followed up with Mr. Donne asking for paperwork because he was eager to start work immediately. Mr. Thompson never heard back from Mr. Donne or anyone else at Salt Lake Trucking Group.

### The UALD Could Not Have Reasonably Determined That The Respondent Has Met Its Burden To Articulate A Legitimate, Non-Discriminatory Reason For Its Action To Not Hire The Charging Party

In the UALD's November 9th, 2018 Determination and Order, it claims that the Respondent had articulated a legitimate non-discriminatory reason for its action by claiming Mr. Thompson was not hired because he "did not show a motivation for the position, was not professional or courteous in the interview, and did not display a work ethic that would enable him to perform the essential functions of the position," during the interview. Based on the Charging Party's response, the UALD decided that the Respondent has met its burden to articulate a legitimate, non-discriminatory reason for its action.

Given that a minor interpreted for a potential disabled employee, there is no way the Salt Lake Trucking Company could have stated a reasonable reason for not hiring my client. Any reason that the Respondent Party had not to hire the Charging Party is irrelevant and was automatically invalidated the moment Ms. Henson's 16 year old daughter stepped into the room to interpret for the Charging Party because using a minor who is not certified or qualified to interpret for a disabled applicant renders the job interview void and illegal.

The first reason why this interview is illegal is because it violates the letter and spirit of the Americans with Disabilities Act (ADA). Although there is no prohibition on requiring an individual with a disability to bring another individual or minor child to interpret for that person under Title I of the ADA, it is forbidden under Title II and III.[1] However, courts and administrative agencies frequently look elsewhere in other federal or state legislative texts for help in interpreting a text or statue. Thus, the definition of a qualified interpreter or the

---

[1] 28 C.F.R. § 35.160(c)(1-3) (Title II); 28 C.F.R. § 36.303(2-4) (Title III).

prohibition on bringing another person or minor to interpret for person with a disability would be helpful where a request for an ASL interpreter is in dispute under Title I of the ADA.

Secondly, although ASL interpreters are not defined under Title I of the ADA, they are defined under Title II and III. A qualified interpreter means an "interpreter who, via a video remote interpreting (VRI) service or an on-site appearance, is able to interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary. Qualified interpreters include, for example, sign language interpreters, oral transliterators, and cued-language transliterators."[2] Ms. Henson's 16 year old daughter was not a qualified ASL interpreter at the time she interpreted for Mr. Thompson's job interview with an individual named Andrew on September 26th, 2017.

The third reason is because Utah has recently passed a law requiring that qualified ASL interpreters must also be licensed and certified. Utah recently passed HB371 which amended Title 53A, Chapter 26a to now require interpreters to obtain state certification as American Sign Language-trained interpreters and that anyone who interprets in the state of Utah without being certified is charged with a Class B Misdemeanor. As a result of the passage of HB371, Utah Administrative Code Rule R746-510-2, defines a "Certified Interpreter" to mean a "person who is certified as meeting the certification requirements" of the "Interpreter Services for the Hearing Impaired Act." As a result, Ms. Henson's 16 year old daughter was not a Utah certified ASL interpreter at the time she interpreted for Mr. Thompson's job interview on September 26th, 2017.

Fourthly, allowing a young sixteen year old female be the interpreter violated the employer's duty to provide effective communication to a Deaf applicant seeking employment under the ADA.

Although effective communications are not defined under Title I of the ADA, they are defined under Title II and III.[3] ASL interpreters are auxiliary aids and services that a covered entity must provide to their employees when requested or offered to the employee. The term "auxiliary aids and services" means "qualified interpreters or other *effective methods* of making aurally delivered materials available to individuals with hearing impairments; qualified readers, taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments; acquisition or modification of equipment or devices; and other similar services and actions."[4]

Unlike the title II effective communication rule, title III's effective communication rule does not require that primary consideration be given to the person with disabilities preference for communication. Rather, the ultimate decision is the place of public accommodation's after consultation with the person with a disability. Title I require an interactive process between the employer and employee to determine how to best accommodate the employee's disability. A discussion between the Charging Party and the Responding Party on how to best accommodate

² 28 C.F.R. § 35.104 (Title II), 28 C.F.R. § 36.104 (Title III).

³ See 28 C.F.R. § 35.160(a-d) (Title II) and 28 C.F.R. § 36.303(c) (Title III).

⁴ 42 U.S.C. § 12103(1)(A-D).

Mr. Thompson's disability never occurred because the Responding Party refused his reasonable accommodation request and told him to bring his own ASL interpreter to the interview.

ADA regulatory guidance states that "although in some circumstances a notepad and written materials may be sufficient to permit effective communication, in other circumstances they may not be sufficient. For example, a qualified interpreter may be necessary when the information being communicated is complex or is exchanged for a lengthy period of time. Generally, factors to be considered in determining whether an interpreter is required include the context in which the communication is taking place, the number of people involved, and the importance of the communication."[5] Given the importance of job interviews for both the employer and the potential employee, the context of discussing potential employment with a trucking company and the sensitivity of discussing personal financial matters as well as employment history, using a minor to interpret for a Deaf applicant destroyed any possibility of effective communication between the interviewer and the interviewee.

Finally, since the ADA applies to the Responding Party, a covered entity "shall not discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[6] That means that a covered entity cannot refuse "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."[7] It also means that a denial of "employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant" may also be a basis for discrimination.[8] The Responding Party intentionally discriminated against the Charging Party by refusing Mr. Thompson's reasonable accommodation request and told him to bring his own ASL interpreter to the interview. On top of that, they intentionally discriminated against Mr. Thompson by allowing a minor to interpret for the Deaf applicant. It further intentionally discriminated against Mr. Thompson by refusing to hire him because of his disability.

Not only was Responding Party's actions illegal, it was extremely unfair, unprofessional and unethical for the business to allow a young sixteen year old female be the interpreter between an interviewer and interviewee. This is true regardless if the applicant had a hearing loss or not. It would be extremely unfair, unprofessional and unethical for the business to allow a young sixteen year old female to interpret for an applicant that does not speak English as their first or native language and communicates in a foreign language. It just boggles the mind that the Responding Party would have thought that using a minor to interpret for an applicant would have been the appropriate way to conduct an interview with a potential candidate for employment. It is just bad business ethics to conduct business this way.

---

[5] *Duffy v. Riveland*, 98 F.3d 447, 456 (9th Cir.1996) (quoting 28 C.F.R. Part 35, App. A).
[6] 42 U.S.C. § 12112 (a).
[7] 42 U.S.C. § 12112 (5)(A).
[8] 42 U.S.C. § 12112 (5)(B).

According to the UALD's November 9th, 2018 Determination and Order, the Responding Party claimed that Mr. Thompson was not hired because he "did not show a motivation for the position, was not professional or courteous in the interview, and did not display a work ethic that would enable him to perform the essential functions of the position," during the interview.

Any reasonable person would have bombed that interview because they would have been reasonably justified in being visibly frustrated with the employer for having allowed a child to interpret. A reasonable person would be less enthusiastic to work at a company after discovering that they allowed a sixteen year old girl to interpret for them. The Responding Party was not professional or courteous before, during or after the interview and robbed the Charging Party of the chance to demonstrate his work ethic that would enable him to perform the essential functions of the position.

Using a minor to interpret for an adult is highly insulting and any reasonable person would have acted the way Mr. Thompson did during that interview. The Charging Party tried to do his best under the circumstances to do a successful interview, but he was clearly frustrated and annoyed with the Responding Party's unprofessional, unethical and illegal use of Ms. Henson's 16 year old daughter as an ASL interpreter. It demonstrated to the Charging Party that the Responding Party did not respect him enough to find a certified and qualified ASL interpreter when he requested one for the interview.

Not only did the Responding Party display a lack of professionalism and courtesy towards Mr. Thompson, but Ms. Henson's 16 year old daughter acted unprofessionally during the interview as well. In addition to her age and lack of certification and qualifications to be an ASL interpreter, she did not remain neutral and professional during the interview.

According to what the UALD learned in their interview with Mr. Thompson, the UALD reported in the November 9th, 2018 Determination and Order that the minor child "disclosed things she should not have disclosed about Charging Party, and when Charging Party was asked about what he expected to make, the interpreter started arguing with the interviewer about what was fair compensation." Somehow, the UALD believed that the Respondent had articulated a legitimate non-discriminatory reason for its action and that there was no pretext in refusing to hire Mr. Thompson. That decision is clearly in error because the job interview between the Charging Party and the Responding Party was filtered through a young sixteen year old girl who was interjecting herself into the interview which negatively affected how the interviewer perceived Mr. Thompson. This might explain why the interviewer felt Mr. Thompson "did not show a motivation for the position, was not professional or courteous in the interview, and did not display a work ethic that would enable him to perform the essential functions of the position," during the interview.

Instead of looking at the minor child as the source for why this interview went poorly for Mr. Thompson, the UALD blindly accepted the Responding Party's flawed and illegal reasons for not hiring Mr. Thompson. The UALD allowed the Responding Party to shift the blame of acting unprofessionally onto Mr. Thompson which the UALD accepted wholeheartedly. Thus, the UALD's decision is erroneous because the UALD attempted to separate the Salt Lake

6

Trucking company's decision from the alleged discriminatory act as though these were separate issues The Charging Party's discriminatory acts and refusal to hire Mr. Thompson are not separate issues. They are connected since the discrimination and refusal to hire Mr. Thompson flows from the (1) refusal to hire a certified and qualified ASL interpreter upon request, (2) using a minor child to interpret for an adult in a job interview and (3) refusing to hire my client because he is Deaf. There is no way they had a legal basis to refuse to hire my client especially when it was the Responding Party who first demonstrated a lack of professionalism and courtesy towards Mr. Thompson during the entire process by refusing and failing to provide effective communication. Moreover, the minor was not qualified or certified to interpret for Mr. Thompson under federal or state law. By failing to remain neutral and detached during the interview, she failed her duty to provide effective communication to a Deaf applicant seeking employment. As a result, she severely contaminated how an employer would evaluate a deaf applicant. Thus, Responding Party's actions was absolutely discriminatory, illegal, unfair, unprofessional and unethical.

For the reasons explained above, the UALD absolutely erred in their findings that the Respondent has met its burden to articulate a legitimate, non-discriminatory reason for its action to not hire the charging party

## The UALD Could Not Have Reasonably Determined The Responding Party's Articulated Reason Was Not A Pretext To Discriminate Against the Charging Party

Once the UALD erroneously found that there was a legitimate, non-discriminatory reason for its action, it reviewed the evidence for whether or not the Charging Party can show that the Responding Party's articulated reason was a pretext. This analysis is required because "once Respondent articulates a legitimate, non-discriminatory reason for its actions, the burden shifts back to Charging Party to show the articulated reason is a pretext. Pretext may be demonstrated by showing: (1) it is more likely than not Respondent's actions were motivated by a discriminatory reason; or (2) Respondent's articulated reason is not credible." *Bertsch v. Overstock.com*, 2014 U.S. Dist. LEXIS 165159, 47 -48 (D. Utah Nov. 24, 2014).

The UALD stated that the "Charging Party claims that Respondent's decision to not hire him was because of his disability, and also claims that Respondent's stated reason of his poor behavior in the interview is not credible. Charging Party states that the individual who interpreted for him during the interview was not professional, disclosed things she should not have disclosed about Charging Party, and when Charging Party was asked about what he expected to make, the interpreter started arguing with the interviewer about what was fair compensation." Based on these facts, the UALD again erroneously found that "this evidence is insufficient to establish pretext. Further, Respondent provided evidence showing that it hired a deaf individual the week before Charging Party. Charging Party failed to establish pretext, and therefore his failure to hire claim must fail."

The UALD errored in their decision that the Charging Party failed to establish pretext for the same reasons explained above for why it erred in their findings that the Respondent has met its burden to articulate a legitimate, non-discriminatory reason for its action to not hire the charging party since the Responding Party refused to accommodate Mr. Thompson's disability

and to provide effective communication for the Charging Party is a form of discrimination on the basis of his deafness. They refused to hire him because the lack of effective communication on the part of the Charging Party and Ms. Henson's 16 year old daughter which was attributed to Mr. Thompson's poor performance during the interview. If Mr. Thompson was hearing or was a hearing individual who spoke a foreign language, effective communication would not have been an issue during the Charging Party's interview.

The UALD also erred when they unquestioningly accepted the Responding Party's claim that there was no pretext because the "Respondent provided evidence showing that it hired a deaf individual the week before Charging Party." This explanation is irrelevant and flawed because it is like a driver stopping at a red light at the first intersection but blowing through the red light at the second intersection and then arguing that it should not be given a ticket for running the red light at the second intersection because the driver obeyed the law at the first intersection. No police officer or traffic court judge would accept this explanation because it is irrelevant if the driver obeyed the traffic lights before or after he ran the red light. It also doesn't justify the driver in breaking the law at that specific light just because he obeyed the traffic signals at other points in the road. All that matters is that the driver ran through the red light at that specific intersection. Thus, the driver is guilty failing to stop at the second intersection.

Here, it is irrelevant whether or not the Respondent hired a deaf individual a week before it interviewed Mr. Thompson. The Responding Party may have stopped at the first intersection by hiring a deaf individual a week before Mr. Thompson's interview, but they subsequently blew through several red lights when they (1) refused to hire a certified and qualified ASL interpreter upon Mr. Thompson's request, (2) used a minor child to interpret for Mr. Thompson and (3) refused to hire Mr. Thompson because he is Deaf. All that matters is that the Responding Party specifically discriminated Mr. Thompson on the basis of his disability by refusing to provide effective communication during the job interview and then refusing to hire him because of his disability of being deaf. As a result, it is irrelevant whether or not the Responding Party hired a deaf individual before or after it interviewed Mr. Thompson. All that matters is that they failed to follow the ADA with respect to Mr. Thompson specifically before, during and after his interview.

As a result, the Responding Party's articulated reason that Mr. Thompson "did not show a motivation for the position, was not professional or courteous in the interview, and did not display a work ethic that would enable him to perform the essential functions of the position," was not the true reason for the adverse employment action. The true reason was because the Responding Party was not interested hiring an ASL interpreter for the Charging Party since they asked Mr. Thompson to bring his own ASL interpreter and then allowed Ms. Henson's 16 year old daughter to act as ASL interpreter despite the fact that she was a minor who had no certifications to interpret in Utah. Furthermore, they allowed the young girl to interfere with Mr. Thompson's interview by interjecting herself into the interview and contaminating Mr. Thompson's interview which caused the interviewer to look unfavorably on the Charging Party. Finally, it rejected Mr. Thompson by reason of his disability because he was not adequately provided with effective communication which caused Mr. Thompson to perform as he did during the interview. In other words, the refusal to accommodate Mr. Thompson's disability and to

provide effective communication for the Charging Party is a form of discrimination on the basis of his deafness.

Therefore, Responding Party's reason for not hiring Mr. Thompson is false or implausible and that the UALD should have able to make the inference that the Charging Party was discriminated on the basis of his disability because of their refusal to accommodate Mr. Thompson's disability and failing provide effective communication for the Charging Party.

Based on the above facts, the UALD could not have reasonably determined the responding party's articulated reason was not a pretext to discriminate against the Charging Party.

## CONCLUSION

Based on the facts outlined in the above Statement of Facts, the UALD's November 9th, 2018 Determination and Order overlooked key facts and failed to apply the relevant laws in Mr. Thompson's claims against Salt Lake Trucking Group, LLC. Those facts and law, when taken into consideration, would have materially and substantially resulted in favorable decision for Mr. Thompson. By failing to incorporate essential facts and relevant laws, The UALD erred in not finding that there was Reasonable Cause to believe that the Respondent discriminated against the Charging Party.

Therefore, Mr. Thompson's written request a formal evidentiary hearing to review de novo the Order with the Division of Adjudication and request for a Substantial Weight Review from the EEOC is fully justified based on the above analysis provided in the Statement of Facts because there is enough factual and legal basis to support Freelove's claims of discrimination and retaliation. This requires a comprehensive review of Mr. Thompson's claims along with a qualified and certified American Sign Language interpreter is absolutely necessary for any hearings or meetings that Mr. Thompson must attend as part of the de novo review by the UALD Division of Adjudication and/or the from the EEOC's Substantial Weight Review.

We strongly urge the UALD to reconsider the de minimis award of $1 award to Robin Thompson given the outrageous, discriminatory, illegal, unfair, unprofessional and unethical conduct that the Responding Party showed towards Mr. Thompson. We urge the UALD to award at least $100,000 in this case due to their refusal to accommodate Mr. Thompson's disability and failing provide effective communication for the Charging Party. The Salt Lake Trucking Company will not learn their lesson unless it hits them in the pocketbook for allowing this absurd job interview to even occur.

In conclusion, we strongly urge the UALD to reconsider their decision in the UALD's November 9th, 2018 Determination and Order and reverse their conclusion to find there is Reasonable Cause to believe that the Respondent discriminated against the Charging Party.

Sincerely,


Jared Allebest

9

# JARED ALLEBEST

8978 South Quarry Stone Way Sandy, Utah 84094 | 949.322.3991 | jared@allebest.com

November 29, 2018

Division of Adjudication
Utah Labor Division
160 East 300 South, 3rd Floor
PO Box 146615
Salt Lake City, Utah 84114-6615
Email: casefiling@utah.gov

Ms. Pam Pershing
State & Local Coordinator
Equal Employment Opportunity Commission
3300 North Central Avenue, Suite 690
Phoenix, Arizona 85012

Re:   NOTICE OF APPEAL (Thompson v. Salt Lake Driving Company UALD NO. B8-OO8O & EEOC NO. 35C-201 8-00080).

To Whom It May Concern,

    This letter serves as our appeal to the Utah Antidiscrimination & Labor Division (UALD) Determination and Order which was issued on November 9th, 2018. We are submitting a written request a formal evidentiary hearing to review de novo the Order with the Division of Adjudication. (See Utah Code 34A-5-107(4c) or 5(c). We also request a Substantial Weight Review from the EEOC.

    As required by R602-7-3(1)(iii)(A-D)), we are submitting the following information:

1. *Name, Address and Telephone Number of Party Seeking De Novo Review.*

Robin Thompson
3698 N 2175 E
Layton, UT 84040
(801) 203 3741 (VP)

Jared Allebest
Attorney for Mr. Thompson
Allebest Law Group
8978 South Quarry Stone Way
Sandy Utah 84094

2. *Name, Mailing Address and Telephone Number of Opposing Parties and Their Attorneys.*

1

Andrew Glancy
Salt Lake Trucking Group, LLC
5745 W 300 S
Salt Lake City, UT 84104

Andrew Glancy
FTA Transport, Inc
5745 W 200 S
Salt Lake City, UT 84104

3. *Date of UALD's Determination and Order Was Issued*: June 29th, 2018.

4. *A Request of Relief*: See below.

## REQUEST FOR RELIEF

Mr. Thompson requests a complete review of his claims against Salt Lake Trucking Group, LLC and FTA Transport, Inc. Additionally, we request that a qualified and certified American Sign Language interpreter(s) be present for any hearings or meetings that Mr. Thompson must attend as part of the de novo review by the UALD Division of Adjudication and/or from the EEOC's Substantial Weight Review.

Mr. Thompson requests an opportunity to present his case in person with his attorney along with supporting documents, evidence and/or witnesses. Mr. Thompson feels that the UALD's Determination and Order was decided incorrectly because he is confident that he can meet all of the elements of his claim of discrimination. He feels that he has the sufficient evidence in the form of documents and witnesses to support his claims.

Finally, Mr. Thompson requests that the UALD submit a finding that there is **Reasonable Cause** to believe that the Respondent discriminated against the Charging Party and to award him a sum higher than a de minimis award of $1.

### Statement of Facts

Mr. Thompson was encouraged to apply at Salt Lake Trucking Group by a friend named Coralynn Henson. He applied for the position. He applied online for the position of OTR Truck Driver.

On September 23rd, 2017, Mr. Thompson sent an email to Dan Donne asking for an American Sign Language (ASL) interpreter for the job interview that was scheduled on September 26th, 2017. Mr. Thompson's request reads, "I will see you this Tuesday 5:30pm and I forgot to add I will need an ASL Interpreter for that interview too. Hope thats not problem for you?"

Mr. Donne responded to Mr. Thompson's request for an ASL interpreter by telling that "you are applying for a job. We are not reaching out to you specifically to say come work for us. You reach to us for this job. If you need an interpreter you need to provide one and bring them with you. Things would be different if we sought you out personally." In another email, Mr. Donne told him that "If you need an interpreter you need to make Provisions yourself."

Coralynn Henson sent an email to Mr. Thompson reminding him to tell Dan that he was bringing Ms. Henson's 16 year old daughter to interpret for him at the interview. Ms. Henson's email reads, "Just a reminder to let Dan know that you're bring your friend's daughter who already did help out the last time." Ms. Henson used her own 16 year old daughter to interpret for her own job interview with Salt Lake Trucking Group.

Mr. Thompson had an interview with an individual named Andrew on September 26th, 2017. An ASL interpreter was not present at that interview because Salt Lake Trucking Group did not provide one. Mr. Thompson used Ms. Henson's 16 year old daughter to interpret for him at that interview Mr. Thompson followed up with Mr. Donne asking for paperwork because he was eager to start work immediately. Mr. Thompson never heard back from Mr. Donne or anyone else at Salt Lake Trucking Group.

### The UALD Could Not Have Reasonably Determined That The Respondent Has Met Its Burden To Articulate A Legitimate, Non-Discriminatory Reason For Its Action To Not Hire The Charging Party

In the UALD's November 9th, 2018 Determination and Order, it claims that the Respondent had articulated a legitimate non-discriminatory reason for its action by claiming Mr. Thompson was not hired because he "did not show a motivation for the position, was not professional or courteous in the interview, and did not display a work ethic that would enable him to perform the essential functions of the position," during the interview. Based on the Charging Party's response, the UALD decided that the Respondent has met its burden to articulate a legitimate, non-discriminatory reason for its action.

Given that a minor interpreted for a potential disabled employee, there is no way the Salt Lake Trucking Company could have stated a reasonable reason for not hiring my client. Any reason that the Respondent Party had not to hire the Charging Party is irrelevant and was automatically invalidated the moment Ms. Henson's 16 year old daughter stepped into the room to interpret for the Charging Party because using a minor who is not certified or qualified to interpret for a disabled applicant renders the job interview void and illegal.

The first reason why this interview is illegal is because it violates the letter and spirit of the Americans with Disabilities Act (ADA). Although there is no prohibition on requiring an individual with a disability to bring another individual or minor child to interpret for that person under Title I of the ADA, it is forbidden under Title II and III.[1] However, courts and administrative agencies frequently look elsewhere in other federal or state legislative texts for help in interpreting a text or statue. Thus, the definition of a qualified interpreter or the

---

[1] 28 C.F.R. § 35.160(c)(1-3) (Title II). 28 C.F.R. § 36.303(2-4) (Title III).

3

prohibition on bringing another person or minor to interpret for person with a disability would be helpful where a request for an ASL interpreter is in dispute under Title I of the ADA.

Secondly, although ASL interpreters are not defined under Title I of the ADA, they are defined under Title II and III. A qualified interpreter means an "interpreter who, via a video remote interpreting (VRI) service or an on-site appearance, is able to interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary. Qualified interpreters include, for example, sign language interpreters, oral transliterators, and cued-language transliterators."[2] Ms. Henson's 16 year old daughter was not a qualified ASL interpreter at the time she interpreted for Mr. Thompson's job interview with an individual named Andrew on September 26th, 2017.

The third reason is because Utah has recently passed a law requiring that qualified ASL interpreters must also be licensed and certified. Utah recently passed HB371 which amended Title 53A, Chapter 26a to now require interpreters to obtain state certification as American Sign Language-trained interpreters and that anyone who interprets in the state of Utah without being certified is charged with a Class B Misdemeanor. As a result of the passage of HB371, Utah Administrative Code Rule R746-510-2, defines a "Certified Interpreter" to mean a "person who is certified as meeting the certification requirements" of the "Interpreter Services for the Hearing Impaired Act." As a result, Ms. Henson's 16 year old daughter was not a Utah certified ASL interpreter at the time she interpreted for Mr. Thompson's job interview on September 26th, 2017.

Fourthly, allowing a young sixteen year old female be the interpreter violated the employer's duty to provide effective communication to a Deaf applicant seeking employment under the ADA.

Although effective communications are not defined under Title I of the ADA, they are defined under Title II and III.[3] ASL interpreters are auxiliary aids and services that a covered entity must provide to their employees when requested or offered to the employee. The term "auxiliary aids and services" means "qualified interpreters or other *effective methods* of making aurally delivered materials available to individuals with hearing impairments; qualified readers, taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments; acquisition or modification of equipment or devices; and other similar services and actions."[4]

Unlike the title II effective communication rule, title III's effective communication rule does not require that primary consideration be given to the person with disabilities preference for communication. Rather, the ultimate decision is the place of public accommodation's after consultation with the person with a disability. Title I require an interactive process between the employer and employee to determine how to best accommodate the employee's disability. A discussion between the Charging Party and the Responding Party on how to best accommodate

---

[2] 28 C.F.R. § 35.104 (Title II), 28 C.F.R. § 36.104 (Title III).
[3] See 28 C.F.R.  § 35.160(a-d) (Title II) and 28 C.F.R. § 36.303(c) (Title III).
[4] 42 U.S.C. § 12103(1)(A-D).

Mr. Thompson's disability never occurred because the Responding Party refused his reasonable accommodation request and told him to bring his own ASL interpreter to the interview.

ADA regulatory guidance states that "although in some circumstances a notepad and written materials may be sufficient to permit effective communication, in other circumstances they may not be sufficient. For example, a qualified interpreter may be necessary when the information being communicated is complex or is exchanged for a lengthy period of time. Generally, factors to be considered in determining whether an interpreter is required include the context in which the communication is taking place, the number of people involved, and the importance of the communication."[5] Given the importance of job interviews for both the employer and the potential employee, the context of discussing potential employment with a trucking company and the sensitivity of discussing personal financial matters as well as employment history, using a minor to interpret for a Deaf applicant destroyed any possibility of effective communication between the interviewer and the interviewee.

Finally, since the ADA applies to the Responding Party, a covered entity "shall not discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[6] That means that a covered entity cannot refuse "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."[7] It also means that a denial of "employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant" may also be a basis for discrimination.[8] The Responding Party intentionally discriminated against the Charging Party by refusing Mr. Thompson's reasonable accommodation request and told him to bring his own ASL interpreter to the interview. On top of that, they intentionally discriminated against Mr. Thompson by allowing a minor to interpret for the Deaf applicant. It further intentionally discriminated against Mr. Thompson by refusing to hire him because of his disability.

Not only was Responding Party's actions illegal, it was extremely unfair, unprofessional and unethical for the business to allow a young sixteen year old female be the interpreter between an interviewer and interviewee. This is true regardless if the applicant had a hearing loss or not. It would be extremely unfair, unprofessional and unethical for the business to allow a young sixteen year old female to interpret for an applicant that does not speak English as their first or native language and communicates in a foreign language. It just boggles the mind that the Responding Party would have thought that using a minor to interpret for an applicant would have been the appropriate way to conduct an interview with a potential candidate for employment. It is just bad business ethics to conduct business this way.

---

[5] *Duffy v. Riveland*, 98 F.3d 447, 456 (9th Cir.1996) (quoting 28 C.F.R. Part 35, App. A).
[6] 42 U.S.C. § 12112 (a).
[7] 42 U.S.C. § 12112 (5)(A).
[8] 42 U.S.C. § 12112 (5)(B).

According to the UALD's November 9th, 2018 Determination and Order, the Responding Party claimed that Mr. Thompson was not hired because he "did not show a motivation for the position, was not professional or courteous in the interview, and did not display a work ethic that would enable him to perform the essential functions of the position," during the interview.

Any reasonable person would have bombed that interview because they would have been reasonably justified in being visibly frustrated with the employer for having allowed a child to interpret. A reasonable person would be less enthusiastic to work at a company after discovering that they allowed a sixteen year old girl to interpret for them. The Responding Party was not professional or courteous before, during or after the interview and robbed the Charging Party of the chance to demonstrate his work ethic that would enable him to perform the essential functions of the position.

Using a minor to interpret for an adult is highly insulting and any reasonable person would have acted the way Mr. Thompson did during that interview. The Charging Party tried to do his best under the circumstances to do a successful interview, but he was clearly frustrated and annoyed with the Responding Party's unprofessional, unethical and illegal use of Ms. Henson's 16 year old daughter as an ASL interpreter. It demonstrated to the Charging Party that the Responding Party did not respect him enough to find a certified and qualified ASL interpreter when he requested one for the interview.

Not only did the Responding Party display a lack of professionalism and courtesy towards Mr. Thompson, but Ms. Henson's 16 year old daughter acted unprofessionally during the interview as well. In addition to her age and lack of certification and qualifications to be an ASL interpreter, she did not remain neutral and professional during the interview.

According to what the UALD learned in their interview with Mr. Thompson, the UALD reported in the November 9th, 2018 Determination and Order that the minor child "disclosed things she should not have disclosed about Charging Party, and when Charging Party was asked about what he expected to make, the interpreter started arguing with the interviewer about what was fair compensation." Somehow, the UALD believed that the Respondent had articulated a legitimate non-discriminatory reason for its action and that there was no pretext in refusing to hire Mr. Thompson. That decision is clearly in error because the job interview between the Charging Party and the Responding Party was filtered through a young sixteen year old girl who was interjecting herself into the interview which negatively affected how the interviewer perceived Mr. Thompson. This might explain why the interviewer felt Mr. Thompson "did not show a motivation for the position, was not professional or courteous in the interview, and did not display a work ethic that would enable him to perform the essential functions of the position," during the interview.

Instead of looking at the minor child as the source for why this interview went poorly for Mr. Thompson, the UALD blindly accepted the Responding Party's flawed and illegal reasons for not hiring Mr. Thompson. The UALD allowed the Responding Party to shift the blame of acting unprofessionally onto Mr. Thompson which the UALD accepted wholeheartedly. Thus, the UALD's decision is erroneous because the UALD attempted to separate the Salt Lake

Trucking company's decision from the alleged discriminatory act as though these were separate issues The Charging Party's discriminatory acts and refusal to hire Mr. Thompson are not separate issues. They are connected since the discrimination and refusal to hire Mr. Thompson flows from the (1) refusal to hire a certified and qualified ASL interpreter upon request, (2) using a minor child to interpret for an adult in a job interview and (3) refusing to hire my client because he is Deaf. There is no way they had a legal basis to refuse to hire my client especially when it was the Responding Party who first demonstrated a lack of professionalism and courtesy towards Mr. Thompson during the entire process by refusing and failing to provide effective communication. Moreover, the minor was not qualified or certified to interpret for Mr. Thompson under federal or state law. By failing to remain neutral and detached during the interview, she failed her duty to provide effective communication to a Deaf applicant seeking employment. As a result, she severely contaminated how an employer would evaluate a deaf applicant. Thus, Responding Party's actions was absolutely discriminatory, illegal, unfair, unprofessional and unethical.

For the reasons explained above, the UALD absolutely erred in their findings that the Respondent has met its burden to articulate a legitimate, non-discriminatory reason for its action to not hire the charging party

### The UALD Could Not Have Reasonably Determined The Responding Party's Articulated Reason Was Not A Pretext To Discriminate Against the Charging Party

Once the UALD erroneously found that there was a legitimate, non-discriminatory reason for its action, it reviewed the evidence for whether or not the Charging Party can show that the Responding Party's articulated reason was a pretext. This analysis is required because "once Respondent articulates a legitimate, non-discriminatory reason for its actions, the burden shifts back to Charging Party to show the articulated reason is a pretext. Pretext may be demonstrated by showing: (1) it is more likely than not Respondent's actions were motivated by a discriminatory reason; or (2) Respondent's articulated reason is not credible." *Bertsch v. Overstock.com*, 2014 U.S. Dist. LEXIS 165159, 47 -48 (D. Utah Nov. 24, 2014).

The UALD stated that the "Charging Party claims that Respondent's decision to not hire him was because of his disability, and also claims that Respondent's stated reason of his poor behavior in the interview is not credible. Charging Party states that the individual who interpreted for him during the interview was not professional, disclosed things she should not have disclosed about Charging Party, and when Charging Party was asked about what he expected to make, the interpreter started arguing with the interviewer about what was fair compensation." Based on these facts, the UALD again erroneously found that "this evidence is insufficient to establish pretext. Further, Respondent provided evidence showing that it hired a deaf individual the week before Charging Party. Charging Party failed to establish pretext, and therefore his failure to hire claim must fail."

The UALD errored in their decision that the Charging Party failed to establish pretext for the same reasons explained above for why it erred in their findings that the Respondent has met its burden to articulate a legitimate, non-discriminatory reason for its action to not hire the charging party since the Responding Party refused to accommodate Mr. Thompson's disability

7

and to provide effective communication for the Charging Party is a form of discrimination on the basis of his deafness. They refused to hire him because the lack of effective communication on the part of the Charging Party and Ms. Henson's 16 year old daughter which was attributed to Mr. Thompson's poor performance during the interview.  If Mr. Thompson was hearing or was a hearing individual who spoke a foreign language, effective communication would not have been an issue during the Charging Party's interview.

The UALD also erred when they unquestioningly accepted the Responding Party's claim that there was no pretext because the "Respondent provided evidence showing that it hired a deaf individual the week before Charging Party." This explanation is irrelevant and flawed because it is like a driver stopping at a red light at the first intersection but blowing through the red light at the second intersection and then arguing that it should not be given a ticket for running the red light at the second intersection because the driver obeyed the law at the first intersection. No police officer or traffic court judge would accept this explanation because it is irrelevant if the driver obeyed the traffic lights before or after he ran the red light. It also doesn't justify the driver in breaking the law at that specific light just because he obeyed the traffic signals at other points in the road. All that matters is that the driver ran through the red light at that specific intersection. Thus, the driver is guilty failing to stop at the second intersection.

Here, it is irrelevant whether or not the Respondent hired a deaf individual a week before it interviewed Mr. Thompson. The Responding Party may have stopped at the first intersection by hiring a deaf individual a week before Mr. Thompson's interview, but they subsequently blew through several red lights when they (1) refused to hire a certified and qualified ASL interpreter upon Mr. Thompson's request, (2) used a minor child to interpret for Mr. Thompson and (3) refused to hire Mr. Thompson because he is Deaf. All that matters is that the Responding Party specifically discriminated Mr. Thompson on the basis of his disability by refusing to provide effective communication during the job interview and then refusing to hire him because of his disability of being deaf. As a result, it is irrelevant whether or not the Responding Party hired a deaf individual before or after it interviewed Mr. Thompson. All that matters is that they failed to follow the ADA with respect to Mr. Thompson specifically before, during and after his interview.

As a result, the Responding Party's articulated reason that Mr. Thompson "did not show a motivation for the position, was not professional or courteous in the interview, and did not display a work ethic that would enable him to perform the essential functions of the position," was not the true reason for the adverse employment action. The true reason was because the Responding Party was not interested hiring an ASL interpreter for the Charging Party since they asked Mr. Thompson to bring his own ASL interpreter and then allowed Ms. Henson's 16 year old daughter to act as ASL interpreter despite the fact that she was a minor who had no certifications to interpret in Utah. Furthermore, they allowed the young girl to interfere with Mr. Thompson's interview by interjecting herself into the interview and contaminating Mr. Thompson's interview which caused the interviewer to look unfavorably on the Charging Party. Finally, it rejected Mr. Thompson by reason of his disability because he was not adequately provided with effective communication which caused Mr. Thompson to perform as he did during the interview.  In other words, the refusal to accommodate Mr. Thompson's disability and to

8

provide effective communication for the Charging Party is a form of discrimination on the basis of his deafness.

Therefore, Responding Party's reason for not hiring Mr. Thompson is false or implausible and that the UALD should have able to make the inference that the Charging Party was discriminated on the basis of his disability because of their refusal to accommodate Mr. Thompson's disability and failing provide effective communication for the Charging Party.

Based on the above facts, the UALD could not have reasonably determined the responding party's articulated reason was not a pretext to discriminate against the Charging Party.

## CONCLUSION

Based on the facts outlined in the above Statement of Facts, the UALD's November 9th, 2018 Determination and Order overlooked key facts and failed to apply the relevant laws in Mr. Thompson's claims against Salt Lake Trucking Group, LLC. Those facts and law, when taken into consideration, would have materially and substantially resulted in favorable decision for Mr. Thompson. By failing to incorporate essential facts and relevant laws, The UALD erred in not finding that there was Reasonable Cause to believe that the Respondent discriminated against the Charging Party.

Therefore, Mr. Thompson's written request a formal evidentiary hearing to review de novo the Order with the Division of Adjudication and request for a Substantial Weight Review from the EEOC is fully justified based on the above analysis provided in the Statement of Facts because there is enough factual and legal basis to support Freelove's claims of discrimination and retaliation. This requires a comprehensive review of Mr. Thompson's claims along with a qualified and certified American Sign Language interpreter is absolutely necessary for any hearings or meetings that Mr. Thompson must attend as part of the de novo review by the UALD Division of Adjudication and/or the from the EEOC's Substantial Weight Review.

We strongly urge the UALD to reconsider the de minimis award of $1 award to Robin Thompson given the outrageous, discriminatory, illegal, unfair, unprofessional and unethical conduct that the Responding Party showed towards Mr. Thompson. We urge the UALD to award at least $100,000 in this case due to their refusal to accommodate Mr. Thompson's disability and failing provide effective communication for the Charging Party. The Salt Lake Trucking Company will not learn their lesson unless it hits them in the pocketbook for allowing this absurd job interview to even occur.

In conclusion, we strongly urge the UALD to reconsider their decision in the UALD's November 9th, 2018 Determination and Order and reverse their conclusion to find there is Reasonable Cause to believe that the Respondent discriminated against the Charging Party.

Sincerely,


Jared Allebest

Case 1:19-cv-00046-DB-DBP   Document 2   Filed 05/13/19   Page 73 of 144

Business Name:

Search by:    Business Name    Number    Executive Name    Search Hints

Business Name:

Robin Thompson
Determination & Order
Page -3-

I.      Charging Party Establishes His Prima Facie Case of Disability Discrimination.

To establish a case of failure to hire based on disability, Charging Party must establish that: (1) he is a member of a protected class; (2) he applied for a position with Respondent; (3) he is qualified for the position for which he applied; and (4) the position was filled by someone not of Charging Party's protected class.

Charging Party is deaf, and a member of the protected class. It is not disputed that he applied for, and was interviewed for, a truck driving position with Respondent in September 2017. It is not disputed that he was qualified for the position.

To establish the fourth element, Charging Party must show that the position was filled by someone not of Charging Party's protected class. For the purposes of this determination, the Division finds that the position was filled by someone not of Charging Party's protected class. Charging Party has established his prima facie case. Once Charging Party establishes a case of discrimination, the burden shifts to Respondent to articulate a legitimate, non-discriminatory reason for its action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

II.     Respondent Articulated a Legitimate Non-discriminatory Reason for Its Action.

Respondent states that Charging Party was not hired because he "did not show a motivation for the position, was not professional or courteous in the interview, and did not display a work ethic that would enable him to perform the essential functions of the position," during the interview. Respondent has met its burden to articulate a legitimate, non-discriminatory reason for its action.

III.    Respondent Articulated a Legitimate Non-discriminatory Reason for Its Action.

Once Respondent articulates a legitimate, non-discriminatory reason for its actions, the burden shifts back to Charging Party to show the articulated reason is a pretext. Pretext may be demonstrated by showing: (1) it is more likely than not Respondent's actions were motivated by a discriminatory reason; or (2) Respondent's articulated reason is not credible. *Bertsch v. Overstock.com*, 2014 U.S. Dist. LEXIS 165159, 47-48 (D. Utah Nov. 24, 2014).

Charging Party claims that Respondent's decision to not hire him was because of his disability, and also claims that Respondent's stated reason of his poor behavior in the interview is not credible. Charging Party states that the individual who interpreted for him during the interview was not professional, disclosed things she should not have disclosed about Charging Party, and when Charging Party was asked about what he expected to make, the interpreter started arguing with the interviewer about what was fair compensation. The Division finds that this evidence is insufficient to establish pretext. Further, Respondent provided evidence showing that it hired a

Robin Thompson
Determination & Order
Page -4-

deaf individual the week before Charging Party. Charging Party failed to establish pretext, and therefore his failure to hire claim must fail.

B.        Charging Party Was Denied Reasonable Accommodation.

To establish a claim of failure to accommodate, Charging Party must show that: (1) he is disabled as defined by the ADA, (2) he is "otherwise qualified" to do the job, and (3) he requested a "plausibly reasonable accommodation." *See Kohl v. Burbank*, 2018 U.S. Dist. LEXIS 104977, 17. If the employee satisfies that burden, the court determines whether the employer has presented evidence "'either (1) conclusively rebutting one or more elements of [the employee's] prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer.'" *Id.*

The Division has previously found that Charging Party is disabled as defined by the ADA, and that he was otherwise qualified to do the job. To establish the third element, Charging Party must show that he requested a plausibly reasonable accommodation. The ADA provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. 12112(a)

He claims that he requested the plausibly reasonable accommodation of having an interpreter in an e-mail to Glancy on September 23, 2017. Charging Party submitted an e-mail chain between himself and Glancy to verify this allegation, and the evidence supports his claim. The Division finds that he has met the third element.

Once Charging Party establishes the above elements, Respondent must show some kind of evidence rebutting one or more elements of Charging Party's prima facie case or establish an affirmative defense. The evidence shows that Glancy told Charging Party that Respondent was not required to provide an interpreter because he, Charging Party, had applied for the job and had not been sought out. Respondent failed to rebut Charging Party's prima facie case or even assert an affirmative defense. Therefore the Division finds that Charging Party has established his prima facie case of failure to accommodate and his claim must prevail.

Robin Thompson
Determination & Order
Page -5-

### IV.  CONCLUSION

The Division concludes that there is **REASONABLE CAUSE** to believe it was more likely than not that Respondent failed to accommodate him.

### ORDER

IT IS THEREFORE ORDERED that Respondent shall provide the following relief to Charging Party:

1.      Respondent shall compensate Charging Party $1.

3.      Respondent shall compensate Charging Party for the payment of associated attorney fees. As of September 24, 2018, this has been computed at $5,000;

4.      Respondent shall implement or monitor existing policies to prevent any future occurrence of discriminatory activity;

5.      Respondent shall not retaliate against Charging Party for having exercised his right to file this request for agency action; and

6.      Respondent shall provide proof of discrimination training for relevant employees to the Division within 45 days of the date this order is signed.

Respondent's failure to comply with the Division's order in this matter may result in the commencement of a civil enforcement action.

RECOMMENDED BY:

_____        _____
Michael Barrett, Investigator                          Date

ISSUED BY:

_____        _____
Kendra L. Shirey, Director                             Date

Robin Thompson
Determination & Order
Page -6-

## APPEAL RIGHTS

**UTAH ANTIDISCRIMINATION & LABOR DIVISION (UALD) (State Administrative Agency):** Either party may appeal this Determination and Order ("Order"), by submitting a written request for a formal evidentiary hearing to review de novo the Order with the Division of Adjudication ("Adjudication"). See Utah Code §34A-5-107(4c) or 5(c). This request must be **received** by Adjudication within thirty (30) days from the date of the issuance of this Order. See *id.* If a timely appeal is not received by Adjudication, this Order becomes the final order of the Commission.

The Notice of Appeal **MUST** include the following information (See R602-7-3(1)(iii)(A-D)):

1.  The name, mailing address, and telephone number of the party seeking the de novo review, and his attorney's name, if applicable;

2.  The name, mailing address, and telephone number of the opposing parties and their attorneys, if applicable;

3.  The date that the Division's Determination and Order was issued;

4.  A request for relief, specifying the type and extent of relief requested, and a statement of facts supporting the requested relief.

The request should be submitted electronically to casefiling@utah.gov. In the alternative, it can be mailed or hand delivered to:

Division of Adjudication
Utah Labor Commission
160 E 300 S. Third Floor
PO Box 146615
Salt Lake City, UT 84114-6615
Fax:  (801) 530-6333

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (EEOC) (Federal Administrative Agency) review:**  The Charging Party may request a Substantial Weight Review by the Equal Employment Opportunity Commission by notifying the following within fifteen (15) days of the date this Order becomes a final action of the Utah Labor Commission:

Ms. Pam Pershing - State & Local Coordinator
Equal Employment Opportunity Commission
3300 N Central Avenue, Suite 690
Phoenix, AZ 85012

Robin Thompson
Determination & Order
Page -7-

If both a Request for a Formal Evidentiary Hearing is requested and a Substantial Weight Review from EEOC is requested, EEOC will conduct its Substantial Weight Review after all of the state administrative proceedings have been concluded.

**REQUEST FOR NOTICE OF RIGHT TO SUE:** The Charging Party may also withdraw their complaint from the Division and request a Right to Sue Notice from the Equal Employment Opportunity Commission in order to pursue the case in federal court. This form is available through the Division.

Robin Thompson
Determination & Order
Page -8-

## DERECHOS PARA APELAR

**LA DIVISIÓN DE ANTIDISCRIMINACIÓN Y LABOR DE UTAH (UALD) (La Agencia Administrativa del Estado de Utah):** Cualquiera de los participantes pueden apelar esta Orden. Necessita presentar una solicitud por escrito y pedir una "audiencia formal" para una revision *de novo* del orden a la division de adjudicacion ("adjudicacion"). Ve Utah Code §34A-5-107(4c) or 5(c). Esta solicitud debe ser recibida por adjudicacion dentro de los treinta (30) días siguientes de la fecha final de esta orden. Si no la recibe adjudicacion, este orden sera el orden final de la comision.

La solicitud para apelar debe de incluir la siguiente informacion (Ve R602-7-3(1)(iii)(A-D))::

1. El nombre, domicilio, y numero telefónico de la persona que esta pidiendo la revision de novo, y el nombre y domicilio de su Representante Legal, si tiene uno;

2. El nombre, domicilio, y numero telefónico de la parte contraria y su Representante Legal, si tiene uno;

3. La fecha cuando la división emitió la Determinación y Orden;

4. Una petición de alivio, especificando la clase y plazo del alivio pedido, y una declaración de los hechos que apoyan el alivio pedido.

La solicitud debe ser enviada por correo electrónico a: casefiling@utah.gov. Como alternativa, se puede mandarlo por correo o traerlo en mano a:

Division of Adjudication
Utah Labor Commission
160 E 300 S. Third Floor
PO Box 146615
Salt Lake City, UT 84114-6615
Fax: (801) 530-6333

**COMISIÓN DE IGUALDAD EN EL EMPLEO (EEOC) (La Agencia Administrativa Federal):** La entidad acusatoria puede pedir una Revision de Carga Sustancial a la Comisión de Igualdad en el Empleo notificando dentro de quince (15) dias siguientes de la fecha en que esta orden se vuelve la acción final de la Comisión Laboral de Utah. La solicitud debe ser enviada a:

Ms. Pam Pershing – State & Local Coordinator
Equal Employment Opportunity Commission

Robin Thompson
Determination & Order
Page -9-

3300 N Central Avenue, Suite 690
Phoenix, AZ 85012

Si ambas audiencias son solicitadas, la Audiencia Formal de Evidencia y la Petición para una Revisión de Cargo Substancial de la Comision de Igualdad en el Empleo, el EEOC conducirá su revisión después de que todos los procedimientos administrativos estatales sean concluidos.

**PETICIÓN DE CARTA CON DERECHO A DEMANDAR:**   La entidad acusatoria también puede retirar su demanda con la División y pedir una carta de demanda a la Comisión de Igualdad en el Empleo para poder abrir el caso en la Corte Federal. Esta carta se encuentra en la División.



**Labor Commission**
JACESON R. MAUGHAN
*Commissioner*

KENDRA L. SHIREY
*Director*

**State of Utah**
GARY R. HERBERT
*Governor*
SPENCER J. COX
*Lt. Governor*

| | |
|---|---|
| **Robin Thompson,** | DETERMINATION |
| Charging Party, | AND |
| vs. | ORDER |
| **Salt Lake Trucking Group LLC,** | UALD NO. B8-0080 |
| Respondent. | EEOC NO. 35C-2018-00080 |

## DETERMINATION

Having reviewed the evidence provided, the Utah Antidiscrimination and Labor Division (the "Division"), under the authority established in the Utah Antidiscrimination Act, Utah Code §34A-5-101 to -112 (2017) (the "Act"), issues the following Determination and Order as to the merits of the subject charge.

### I. JURISDICTION

To establish jurisdiction, Robin Thompson ("Charging Party") must show that Salt Lake Trucking Group LLC ("Respondent") employed 15 or more employees in 20 or more weeks of the current year, and that he filed this complaint within 180 days from the date of the last alleged harm. The Division interviewed Andrew Glancy ("Glancy"), the general manager for Respondent, who stated that Respondent does not have any employees. However, Glancy admitted that he is the general manager for a handful of companies. Therefore, the Division turns to the integrated enterprise test.

Under the integrated enterprise test, the following four factors are considered: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1089 (10th Cir.1991).

Glancy stated that Respondent is used as a brand entity for the trucking companies that he manages, and that he uses Respondent as the face for three trucking companies. The Division finds, based on Glancy's admissions, that Respondent and FTA Transport are integrated entities in that Glancy stated they have common management, ownership, and financial control, and Respondent exists as a public face for FTA Transport. The Division also notes that Charging

Robin Thompson
Determination & Order
Page -2-

Party filed this complaint within 180 days from the date of the last alleged harm. Thus, all jurisdictional requirements have been met as required by the Act.

The Division will consider for its determination all events that occurred between the date of filing and May 18, 2017, the 180-day jurisdictional mark. The Division will treat all other prior events as being untimely. However, such events may be given weight for evidentiary purposes.

On November 14, 2017, Charging Party alleged that Respondent discriminated against him based on his disability. Respondent denies Charging Party was subject to discrimination and states that it failed to hire Charging Party because of his behavior during his job interview on September 26, 2017.

## II. SUMMARY OF INVESTIGATION

The Division investigated all of Charging Party's allegations made against Respondent that he considered to be discriminatory. This determination is based on whether or not, after the investigation, there was sufficient evidence to show that illegal discrimination occurred. We conclude that there is sufficient evidence to support Charging Party's charge.

Charging Party is deaf, and applied for a position as a truck driver with Respondent in September 2017. He was schedule for an interview on September 26, 2017, and sent an e-mail to Glancy on September 23, 2017 requesting an interpreter. In Glancy's response he denied the request. Charging Party provided a copy of this e-mail chain to the Division. Charging Party states that he was forced to use his own interpreter for the job interview, and further states that because the interpreter was not certified, he was poorly represented during the interview. Specifically he claims that the interpreter argued with Glancy during the interview, and attempted to negotiate wages for Charging Party, rather than acting strictly as an interpreter. He claims that he was not hired because of his disability.

Respondent denies that Charging Party was subject to discrimination. It states that Charging Party was not hired because of how he behaved in the interview. It also claims that it hired a deaf individual the week before Charging Party was interviewed.

## III. ANALYSIS

A.   Charging Party Failed to Show that Respondent Refused to Hire Him Because of His Disability.

Exhibit #6



**Labor Commission**
JACESON R. MAUGHAN
*Commissioner*

KENDRA L. SHIREY
*Director*

**State of Utah**
GARY R. HERBERT
*Governor*
SPENCER J. COX
*Lieutenant Governor*

January 7, 2019

Robin Thompson
51 N 600 E
Centerville UT 84014

    Re: Robin Thompson v. Salt Lake Trucking Group LLC
      UALD No. B8-0080 and EEOC No. 35C-2018-00080 (ADA, UADA)

Dear Mr. Thompson:

Enclosed please find your copy of the Utah Antidiscrimination and Labor Division's
Determination and Order for the charge listed above.

Your rights for an appeal and/or for a review of the Determination by the Equal Employment
Opportunity Commission are contained in the body of the Order.

**Please note that the APPEAL DEADLINE is on February 6, 2019. If you are going to
appeal the division's decision, our office needs to receive your request, in writing, by this
date.**

**Por favor tenga presente que el ultimo dia para apelar la decision es Febrero 6, 2019 y
nuestra oficina tiene que recibirla en escrito para esta fecha.**

Sincerely,

Kendra L. Shirey
Director

KLS/gs

cc: Kirk Glancy and Andrew Glancy
  Jared Allebest Esq



**Labor Commission**
JACESON R. MAUGHAN
*Commissioner*

KENDRA L. SHIREY
*Director*

**State of Utah**
GARY R. HERBERT
*Governor*
SPENCER J. COX
*Lieutenant Governor*

| | |
|---|---|
| **Robin Thompson,** | **DETERMINATION** |
| Charging Party, | **AND** |
| vs. | **ORDER** |
| **Salt Lake Trucking Group LLC,** | **UALD NO.** B8-0080 |
| Respondent. | **EEOC NO.** 35C-2018-00080 |

## DETERMINATION

Having reviewed the evidence provided, the Utah Antidiscrimination and Labor Division (the "Division"), under the authority established in the Utah Antidiscrimination Act, Utah Code §34A-5-101 to -112 (2017) (the "Act"), issues the following Determination and Order as to the merits of the subject charge.

### I. JURISDICTION

To establish jurisdiction, Robin Thompson ("Charging Party") must show that Salt Lake Trucking Group LLC ("Respondent") employed 15 or more employees in 20 or more weeks of the current year, and that he filed this complaint within 180 days from the date of the last alleged harm. The Division interviewed Andrew Glancy ("Glancy"), the general manager for Respondent, who stated that Respondent does not have any employees. However, Glancy admitted that he is the general manager for a handful of companies. Therefore, the Division turns to the integrated enterprise test.

Under the integrated enterprise test, the following four factors are considered: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. *Evans v. McDonald's Corp.,* 936 F.2d 1087, 1089 (10th Cir.1991).

Glancy stated that Respondent is used as a brand entity for the trucking companies that he manages, and that he uses Respondent as the face for three trucking companies. The Division finds, based on Glancy's admissions, that Respondent and FTA Transport are integrated entities in that Glancy stated they have common management, ownership, and financial control, and Respondent exists as a public face for FTA Transport. The Division also notes that Charging

Robin Thompson
Determination & Order
Page -2-

Party filed this complaint within 180 days from the date of the last alleged harm.  Thus, all jurisdictional requirements have been met as required by the Act.

The Division will consider for its determination all events that occurred between the date of filing and May 18, 2017, the 180-day jurisdictional mark. The Division will treat all other prior events as being untimely.  However, such events may be given weight for evidentiary purposes.

On November 14, 2017, Charging Party alleged that Respondent discriminated against him based on his disability.  Respondent denies Charging Party was subject to discrimination and states that it failed to hire Charging Party because of his behavior during his job interview on September 26, 2017.

## II.  SUMMARY OF INVESTIGATION

The Division investigated all of Charging Party's allegations made against Respondent that he considered to be discriminatory.  This determination is based on whether or not, after the investigation, there was sufficient evidence to show that illegal discrimination occurred.  We conclude that there is sufficient evidence to support Charging Party's charge.

Charging Party is deaf, and applied for a position as a truck driver with Respondent in September 2017.  He was schedule for an interview on September 26, 2017, and sent an e-mail to Glancy on September 23, 2017 requesting an interpreter. In Glancy's response he denied the request. Charging Party provided a copy of this e-mail chain to the Division. Charging Party states that he was forced to use his own interpreter for the job interview, and further states that because the interpreter was not certified, he was poorly represented during the interview. Specifically he claims that the interpreter argued with Glancy during the interview, and attempted to negotiate wages for Charging Party, rather than acting strictly as an interpreter. He claims that he was not hired because of his disability.

Respondent denies that Charging Party was subject to discrimination. It states that Charging Party was not hired because of how he behaved in the interview. It also claims that it hired a deaf individual the week before Charging Party was interviewed.

Robin Thompson
Determination & Order
Page -3-

## III. ANALYSIS

A.  Charging Party Failed to Show that Respondent Refused to Hire Him Because of His Disability.

    I.  Charging Party Establishes His Prima Facie Case of Disability Discrimination.

To establish a case of failure to hire based on disability, Charging Party must establish that: (1) he is a member of a protected class; (2) he applied for a position with Respondent; (3) he is qualified for the position for which he applied; and (4) the position was filled by someone not of Charging Party's protected class.

Charging Party is deaf, and a member of the protected class. It is not disputed that he applied for, and was interviewed for, a truck driving position with Respondent in September 2017. It is not disputed that he was qualified for the position.

To establish the fourth element, Charging Party must show that the position was filled by someone not of Charging Party's protected class. For the purposes of this determination, the Division finds that the position was filled by someone not of Charging Party's protected class. Charging Party has established his prima facie case. Once Charging Party establishes a case of discrimination, the burden shifts to Respondent to articulate a legitimate, non-discriminatory reason for its action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

    II.  Respondent Articulated a Legitimate Non-discriminatory Reason for Its Action.

Respondent states that Charging Party was not hired because he "did not show a motivation for the position, was not professional or courteous in the interview, and did not display a work ethic that would enable him to perform the essential functions of the position," during the interview. Respondent has met its burden to articulate a legitimate, non-discriminatory reason for its action.

    III.  Charging Party Fails to Establish that Respondent's Reason for Not Hiring Him Was A Pretext for Discrmination.

Once Respondent articulates a legitimate, non-discriminatory reason for its actions, the burden shifts back to Charging Party to show the articulated reason is a pretext.  Pretext may be demonstrated by showing:  (1) it is more likely than not Respondent's actions were motivated by a discriminatory reason; or (2) Respondent's articulated reason is not credible. *Bertsch v. Overstock.com*, 2014 U.S. Dist. LEXIS 165159, 47-48 (D. Utah Nov. 24, 2014).

Charging Party claims that Respondent's decision to not hire him was because of his disability, and also claims that Respondent's stated reason of his poor behavior in the interview is not

Robin Thompson
Determination & Order
Page -4-

credible. Charging Party states that the individual who interpreted for him during the interview was not professional, disclosed things she should not have disclosed about Charging Party, and when Charging Party was asked about what he expected to make, the interpreter started arguing with the interviewer about what was fair compensation. The Division finds that this evidence is insufficient to establish pretext. Further, Respondent provided evidence showing that it hired a deaf individual the week before Charging Party. Charging Party failed to establish pretext, and therefore his failure to hire claim must fail.

B.      Charging Party Was Denied Reasonable Accommodation.

To establish a claim of failure to accommodate, Charging Party must show that: (1) he is disabled as defined by the ADA, (2) he is "otherwise qualified" to do the job, and (3) he requested a "plausibly reasonable accommodation." *See Kohl v. Burbank*, 2018 U.S. Dist. LEXIS 104977, 17. If the employee satisfies that burden, the court determines whether the employer has presented evidence "'either (1) conclusively rebutting one or more elements of [the employee's] prima facie case or (2) establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer.'" *Id.*

The Division has previously found that Charging Party is disabled as defined by the ADA, and that he was otherwise qualified to do the job. To establish the third element, Charging Party must show that he requested a plausibly reasonable accommodation. The ADA provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. 12112(a)

He claims that he requested the plausibly reasonable accommodation of having an interpreter in an e-mail to Glancy on September 23, 2017. Charging Party submitted an e-mail chain between himself and Glancy to verify this allegation, and the evidence supports his claim. The Division finds that he has met the third element.

Once Charging Party establishes the above elements, Respondent must show some kind of evidence rebutting one or more elements of Charging Party's prima facie case or establish an affirmative defense. The evidence shows that Glancy told Charging Party that Respondent was not required to provide an interpreter because he, Charging Party, had applied for the job and had not been sought out. Respondent failed to rebut Charging Party's prima facie case or even assert an affirmative defense. Therefore the Division finds that Charging Party has established his prima facie case of failure to accommodate and his claim must prevail.

Robin Thompson
Determination & Order
Page -5-

## IV.  CONCLUSION

The Division concludes that there is **REASONABLE CAUSE** to believe it was more likely than not that Respondent failed to accommodate him.

### ORDER

IT IS THEREFORE ORDERED that consistent with Utah Code §§ 34A-5-107(5)(b)(ii) and 34A-5-107(8), Respondent shall provide the following relief to Charging Party:

1.  Respondent shall compensate Charging Party for the payment of associated attorney fees. As of September 24, 2018, this has been computed at $5,000;

2.  Respondent shall implement new policies or update existing policies to ensure that hearing impaired job applicants are provided an interpreter if such a request for reasonable accommodation is made.

3.  Respondent shall not retaliate against Charging Party for having exercised his right to file this request for agency action; and

4.  Respondent shall provide proof of discrimination training for all employees that participate in the hiring process for Respondent to the Division within 45 days of the date this order is signed.

Respondent's failure to comply with the Division's order in this matter may result in the commencement of a civil enforcement action.

RECOMMENDED BY:

_____          1.7.19
Michael Barrett, Investigator             Date

ISSUED BY:

_____          1.7.19
Kendra L. Shirey, Director                Date

Robin Thompson
Determination & Order
Page -6-

## APPEAL RIGHTS

**UTAH ANTIDISCRIMINATION & LABOR DIVISION (UALD) (State Administrative Agency):** Either party may appeal this Determination and Order ("Order"), by submitting a written request for a formal evidentiary hearing to review de novo the Order with the Division of Adjudication ("Adjudication"). See Utah Code §34A-5-107(4c) or 5(c). This request must be **received** by Adjudication within thirty (30) days from the date of the issuance of this Order. See *id.* If a timely appeal is not received by Adjudication, this Order becomes the final order of the Commission.

The Notice of Appeal **MUST** include the following information (See R602-7-3(1)(iii)(A-D)):

1. The name, mailing address, and telephone number of the party seeking the de novo review, and his attorney's name, if applicable;

2. The name, mailing address, and telephone number of the opposing parties and their attorneys, if applicable;

3. The date that the Division's Determination and Order was issued;

4. A request for relief, specifying the type and extent of relief requested, and a statement of facts supporting the requested relief.

The request should be submitted electronically to casefiling@utah.gov. In the alternative, it can be mailed or hand delivered to:

Division of Adjudication
Utah Labor Commission
160 E 300 S. Third Floor
PO Box 146615
Salt Lake City, UT 84114-6615
Fax:  (801) 530-6333

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION (EEOC) (Federal Administrative Agency) review:**  The Charging Party may request a Substantial Weight Review by the Equal Employment Opportunity Commission by notifying the following within fifteen (15) days of the date this Order becomes a final action of the Utah Labor Commission:

Ms. Pam Pershing - State & Local Coordinator
Equal Employment Opportunity Commission
3300 N Central Avenue, Suite 690
Phoenix, AZ 85012

Robin Thompson
Determination & Order
Page -7-

If both a Request for a Formal Evidentiary Hearing is requested and a Substantial Weight Review from EEOC is requested, EEOC will conduct its Substantial Weight Review after all of the state administrative proceedings have been concluded.

**REQUEST FOR NOTICE OF RIGHT TO SUE:**  The Charging Party may also withdraw their complaint from the Division and request a Right to Sue Notice from the Equal Employment Opportunity Commission in order to pursue the case in federal court.  This form is available through the Division.

Robin Thompson
Determination & Order
Page -8-

## DERECHOS PARA APELAR

**LA DIVISIÓN DE ANTIDISCRIMINACIÓN Y LABOR DE UTAH (UALD) (La Agencia Administrativa del Estado de Utah):** Cualquiera de los participantes pueden apelar esta Orden. Necessita presentar una solicitud por escrito y pedir una "audiencia formal" para una revision *de novo* del orden a la division de adjudicacion ("adjudicacion"). Ve Utah Code §34A-5-107(4c) or 5(c). Esta solicitud debe ser recibida por adjudicacion dentro de los treinta (30) días siguientes de la fecha final de esta orden. Si no la recibe adjudicacion, este orden sera el orden final de la comision.

La solicitud para apelar debe de incluir la siguiente informacion (Ve R602-7-3(1)(iii)(A-D))::

1. El nombre, domicilio, y numero telefónico de la persona que esta pidiendo la revision de novo, y el nombre y domicilio de su Representante Legal, si tiene uno;

2. El nombre, domicilio, y numero telefónico de la parte contraria y su Representante Legal, si tiene uno;

3. La fecha cuando la división emitió la Determinación y Orden;

4. Una petición de alivio, especificando la clase y plazo del alivio pedido, y una declaración de los hechos que apoyan el alivio pedido.

La solicitud debe ser enviada por correo electrónico a: caseefiling@utah.gov. Como alternativa, se puede mandarlo por correo o traerlo en mano a:

Division of Adjudication
Utah Labor Commission
160 E 300 S. Third Floor
PO Box 146615
Salt Lake City, UT 84114-6615
Fax: (801) 530-6333

**COMISIÓN DE IGUALDAD EN EL EMPLEO (EEOC) (La Agencia Administrativa Federal):** La entidad acusatoria puede pedir una Revision de Carga Sustancial a la Comisión de Igualdad en el Empleo notificando dentro de quince (15) dias siguientes de la fecha en que esta orden se vuelve la acción final de la Comisión Laboral de Utah. La solicitud debe ser enviada a:

Ms. Pam Pershing - State & Local Coordinator
Equal Employment Opportunity Commission

Robin Thompson
Determination & Order
Page -9-

3300 N Central Avenue, Suite 690
Phoenix, AZ 85012

Si ambas audiencias son solicitadas, la Audiencia Formal de Evidencia y la Petición para una Revisión de Cargo Substancial de la Comision de Igualdad en el Empleo, el EEOC conducirá su revisión después de que todos los procedimientos administrativos estatales sean concluidos.

**PETICIÓN DE CARTA CON DERECHO A DEMANDAR:**  La entidad acusatoria también puede retirar su demanda con la División y pedir una carta de demanda a la Comisión de Igualdad en el Empleo para poder abrir el caso en la Corte Federal.  Esta carta se encuentra en la División.

## CERTIFICATE OF MAILING

I certify that on January 7, 2019, I mailed a copy of the attached Determination and Order by putting them into the state mail system to the following parties at the following addresses:

Robin Thompson
51 N 600 E
Centerville UT  84014

Kirk Glancy
Salt Lake Trucking Group
5745 W 300 S
Salt Lake City UT  84104

Andrew Glancy
Fta Transport Inc
5745 W 300 S
Salt Lake City UT  84104

Jared Allebest Esq
Allebest Law Group
8978 S Quarry Stone Way
Sandy UT  84094


_____

Gabriella Salazar

Exhibit #7



Jared Allebest <jared@allebest.com>

## Request for "Right to Sue" Letter in Thompson v. Salt Lake Driving Company (UALD Case #B8-0080)

**Jared Allebest** <jared@allebest.com>                                          Wed, Jan 23, 2019 at 9:39 AM
To: michaelbarrett@utah.gov
Cc: casefiling@utah.gov
Bcc: Jared Allebest <Jared@allebest.com>, Robin Thompson <trobin.wun@gmail.com>

Mr. Barrett,

Good morning. I am requesting a "right to sue" letter from the UALD in the matter of Thompson v. Salt Lake Driving Company (UALD Case #B8-0080). Please provide me with a form to make a request or the "right to sue" letter itself.

Sincerely,

Jared

**JARED M. ALLEBEST**, JD, Esq.

Allebest Law Group,

Mail: 8978 South Quarry Stone Way Sandy Utah 84094

949/322-3991-cell   801/204-9055-videophone e-mail: jared@allebest.com

Your referrals are the cornerstone of our business success.   They are both welcomed and most sincerely appreciated.

*We specialize in:*

• **DISABILITY RIGHTS LITIGATION**: Negotiations, Arbitration, Mediation, Litigation, etc. for: disabled individuals who have encountered discrimination or denial of public access in violation of the ADA.

• **DEAF RIGHTS**: Education, Negotiations, Arbitration, Mediation, Litigation, etc.. for: deaf or hard of hearing individuals to ensure reasonable accommodations in employment, medical care, and housing.

• **ESTATE PLANNING**: Living Trusts, Insurance Trusts, Family Partnerships, Residence Trusts, etc. for: Probate Avoidance, Estate Tax Avoidance, and Creating an Orderly Plan Of Distribution.

• **BUSINESS PLANNING**: Partnerships, Corporations, LLCs, Contract Negotiations, Mergers, Acquisitions, Buy-Sell Agreements, etc. for: Entity Creation, Problem Solving, Business Expansion and Continuation.

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with requirements by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Allebest Law Group

Exhibit #8



Jared Allebest <jared@allebest.com>

## Request for "Right to Sue" Letter in Thompson v. Salt Lake Driving Company (UALD Case #B8-0080)

**Gabriella Salazar** <gsalazar@utah.gov>
To: jared@allebest.com
Cc: Gabriella Salazar <gsalazar@utah.gov>

Fri, Jan 25, 2019 at 4:47 PM

Mr. Allebest:

Please see the attached Notice of Right to Sue request form, per your request. You may email the form back to me at your earliest convenience.

Thank you,

*Gabriella Salazar*

*Support Specialist II*
*Antidiscrimination and Labor Division*
*160 East 300 South, 3rd Floor*
*P.O. Box 146630*
*Salt Lake City, Utah 84114-6630*
*gsalazar@utah.gov*
*www.laborcommission.utah.gov*
*Phone: (801) 530-6889*
*Fax: (801) 530-7609*

On Fri, Jan 25, 2019 at 3:46 PM Waiva Charlesworth <wroberts@utah.gov> wrote:

> ---------- Forwarded message ---------
> From: **CaseFiling LC** <casefiling@utah.gov>
> Date: Thu, Jan 24, 2019 at 9:23 AM
> Subject: Fwd: Request for "Right to Sue" Letter in Thompson v. Salt Lake Driving Company (UALD Case #B8-0080)
> To: DISCRIMINATION <DISCRIMINATION@utah.gov>, David Jensen <davidjensen@utah.gov>
>
>
> [Quoted text hidden]
> --
> **Please do not reply to this message**. Replies to this message are routed to an unmonitored mailbox.
>
> - If you have questions, please contact the judge's clerk directly.
> - If you wish to email documents to the Adjudication Division, you must send them in a new email addressed directly to: casefiling@utah.gov. We will only accept PDFs.
>
>
> --

**Waiva Charlesworth**

*Office Specialist II*

Utah Antidiscrimination and Labor Division
160 East 300 South, 3rd Floor
P.O. Box 146630
Salt Lake City, Utah 84114-6630

Direct: 801-530-6439

**nrts.doc**
32K

Exhibit #9

# REQUEST FOR WITHDRAWAL OF CHARGE OF DISCRIMINATION
## AND
## REQUEST FOR A NOTICE OF RIGHT TO SUE

You recently indicated a desire to withdraw your charge from the Utah Antidiscrimination & Labor Division (UALD) and request a Notice of Right to Sue from the Equal Employment Opportunity Commission (EEOC).

Please note that your charge is presently open with both the UALD and the EEOC. Completing this request will close your case with the UALD.

Charging Party:     Robin Thompson

Respondent:     Salt Lake Trucking Group LLC

UALD No.     B8-0080     EEOC No.     35C-2018-00080

I am aware that the EEOC and the UALD protect my right to file a complaint. I have been advised that it is unlawful for any person covered by the anti-discrimination laws to threaten, intimidate, or harass me because I have filed a complaint. I have not been forced to request this withdrawal.

I request the withdrawal of my charge because I plan to file a complaint in a judicial court of law. I hereby request the EEOC to issue me a Notice of Right to Sue. I understand the propriety of issuing the Notice may be challenged in court if the Notice is issued less than 180 days from the date I filed my complaint.

I further request that my charge filed with the Utah Antidiscrimination & Labor Division of the Labor Commission be WITHDRAWN.


_____     _____
Robin Thompson                          Date   1/28/19


| For UALD Use only: | For EEOC Use Only: |
|---|---|
| _____ Approve   _____ Disapprove | _____ Approve   _____ Disapprove |
| Division Director _____ | Director _____ |
| Date: | Date: |

Nrts 10/22/2001 (rev)

# Exhibit #10

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  **Robin Thompson**<br>3989 N 2175 E<br>Layton, UT 84040 | From:  **Phoenix District Office**<br>3300 North Central Ave<br>Suite 690<br>Phoenix, AZ 85012 |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **35C-2018-00080** | **State & Local L. Program,**<br>**State & Local Coordinator** | **(602) 640-5053** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice.  Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u>** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**Elizabeth Cadle,**
**District Director**

Apr 3, 2019

*(Date Mailed)*

Enclosures(s)

cc:

| | |
|---|---|
| **Andrew Glancy**<br>**FTA Transport Inc**<br>5745 W 300 S<br>Salt Lake City, UT 84104 | **Jared Allebest**<br>**Allebest Law Group**<br>8978 S Quarry Stone Way<br>Sandy, UT 84094 |

Exhibit #11

**801.679.4299**     **APPLY NOW**



≡

# ABOUT US

## FOUNDED IN 1995

## SALT LAKE TRUCKING GROUP
### QUALITY TRANSPORTATION

Salt Lake Trucking Group represents a group of trucking and logistics companies founded in 1995. We have been committed contractors to a select number of core shippers.

In recent years our growth has been rapidly increasing to over 130+ power units.



# TRANSPORTATION
## WHERE WE BEGAN

Salt Lake Trucking Group began in 1995 as Eugene Trucking. Our company was proudly built by a driver, for drivers. Gradually, trucks and partners were added. Several contracts were awarded, starting with FedEx Ground and later forming our Road Division. Today, we have united our many companies under the umbrella of the Salt Lake Trucking Group.

In August of 2017 we added our Amazon Home Delivery Courier Group servicing Salt Lake County, Utah County, and the Davis and Weber Counties. In July 2018 we began an additional Amazon Home Delivery operations in Phoenix Arizona, Denver and Colorado Springs Colorado, and Boise Idaho. We look forward to adding many new locations soon.

Currently, we employ nearly 1000 employees and are looking forward to our ongoing growth and success.

---



### SERVICES

About Us

Contact

Work For Us

Get Your CDL

### CONTACT

5745 W 300 S
Salt Lake City, UT
84104

Office: 801.679.4299
Fax: 801.679.4845

jobs@sltruckinggroup.com







Map data ©2019 Google

## 2017 Salt Lake Trucking Group | All Rights Reserved

Exhibit#12



**Jared Allebest <jared@allebest.com>**

---

## Fwd: W/E Courier Interview - Robin Thompson
2 messages

---

**Robin Thompson** <trobin.wun@gmail.com>                    Mon, Oct 16, 2017 at 12:21 PM
To: Jared@allebest.com

---------- Forwarded message ----------
From: **Dan Donner** <dan@sltruckinggroup.com>
Date: Sat, Sep 23, 2017 at 6:28 PM
Subject: Re: W/E Courier Interview - Robin Thompson
To: trobin.wun@gmail.com

If you need an interpreter you need to make Provisions yourself.

*Sent from my Verizon 4G LTE Droid*
On Sep 23, 2017 6:24 PM, Robin Thompson <trobin.wun@gmail.com> wrote:
> also  provide Interpreter?
>
>> On Sat, Sep 23, 2017 at 6:23 PM, Robin Thompson <trobin.wun@gmail.com> wrote:
>> On Tuesday?
>>
>>> On Sat, Sep 23, 2017 at 12:08 PM, Dan Donner <dan@sltruckinggroup.com> wrote:
>>> You are scheduled for 5:00. That is the last slot of the day.
>>>
>>> Dan
>>>
>>> *Sent from my Verizon 4G LTE Droid*
>>> On Sep 23, 2017 11:44 AM, Robin Thompson <trobin.wun@gmail.com> wrote:
>>>> Hi Dan,
>>>> I will see you this Tuesday 5:30pm and I forgot to add I will need an
>>>> ASL Interpreter for that interview too.  Hope thats not problem for you?
>>>>
>>>> 2017-09-22 11:13 GMT-06:00 Dan Donner <dan@sltruckinggroup.com>:
>>>>
>>>>
>>>> --
>>>> Robin Thompson
>>>>
>>>>
>> --
>> Robin Thompson

--

Robin Thompson

--

Robin Thompson

---

**Robin Thompson** <trobin.wun@gmail.com>                           Mon, Oct 16, 2017 at 12:22 PM
To: Jared@allebest.com

---------- Forwarded message ----------
From: **Dan Donner** <dan@sltruckinggroup.com>
Date: Sat, Sep 23, 2017 at 6:30 PM
Subject: Re: W/E Courier Interview - Robin Thompson
To: trobin.wun@gmail.com

Robin,

You are applying for a job. We are not reaching out to you specifically to say come work for us. You reach to us for this job. If you need an interpreter you need to provide one and bring them with you.

Things would be different if we sought you out personally.

*Sent from my Verizon 4G LTE Droid*
On Sep 23, 2017 6:24 PM, Robin Thompson <trobin.wun@gmail.com> wrote:

> also  provide Interpreter?

>> On Sat, Sep 23, 2017 at 6:23 PM, Robin Thompson <trobin.wun@gmail.com> wrote:
>> On Tuesday?

>>> On Sat, Sep 23, 2017 at 12:08 PM, Dan Donner <dan@sltruckinggroup.com> wrote:
>>> You are scheduled for 5:00. That is the last slot of the day.

>>> Dan

>>> *Sent from my Verizon 4G LTE Droid*
>>> On Sep 23, 2017 11:44 AM, Robin Thompson <trobin.wun@gmail.com> wrote:
>>> Hi Dan,
>>> I will see you this Tuesday 5:30pm and I forgot to add I will need an ASL Interpreter for that interview too.  Hope thats not problem for you?

>>>> 2017-09-22 11:13 GMT-06:00 Dan Donner <dan@sltruckinggroup.com>:



**Jared Allebest <jared@allebest.com>**

---

## Fwd: W/E Courier Interview - Robin Thompson

**Robin Thompson** <trobin.wun@gmail.com>
To: Jared@allebest.com

Mon, Oct 16, 2017 at 6:15 PM

---

---------- Forwarded message ----------
From: **Dan Donner** <dan@sltruckinggroup.com>
Date: 2017-09-22 11:13 GMT-06:00
Subject: W/E Courier Interview - Robin Thompson
To: kirk@sltruckinggroup.com, **Robin Thompson** <trobin.wun@gmail.com>, andrew@sltruckinggroup.com,
Joe Eastin <joe@sltruckinggroup.com>, dandonner1@gmail.com, brooklyn@sltruckinggroup.com

--
Robin Thompson

  **invite.ics**
  4K

--
Robin Thompson


--
Robin Thompson


--
Robin Thompson


--
Robin Thompson

Exhibit#13



# OTR Truck Driver - Dedicated - Class A CDL - FedEx Ground / Amazon / Estes at Salt Lake Trucking Group

Posted August 31, 2017
Ad Number 758485

**Contact**
Name: Dan Donner
Email: jobs@sltruckinggroup.com



CDL Truck Drivers – DO WE HAVE AN AWESOME OPPORTUNITY FOR YOU!

We are looking for CDL A Drivers willing to RUN Teams - Diverse Driving Opportunities

Top Pay - Up to $.62 cpm based on experience, and division
Top Miles - 5000-6500 miles per week
No touch freight - Drop and Hook
Trucks traded every 24 months
Excellent Home Time
Sign on Bonus
Bonus for Clean DOT Inspections and referral bonus

**Responsibilities**
Dedicated team driving from hub to hub. Dedicated drivers are out five days and back home for two. No touch freight. Opportunities for even more money and miles on FedEx Ground division extra board.

**Qualifications**
Class A CDL
Doubles/Triples Endorsements

Hazmat
No felonies within the last 10 years - No DUI's last 5
1 Year OTR Experience
Trainees that have completed an Approved Trucking School will also qualify.
Clean MVR
Clean Background

Benefits Available after 45 days Medical / Dental /Vision

**Additional Information**
Send Resume to jobs@sltruckinggroup.com or call recruiting at 801-679-4288

| | |
|---|---|
| **Salary Range:** | $40,000 - $80,000 |
| **Category:** | Transportation & Logistics |
| **Location:** | Salt Lake City, Utah |
| **Job Type:** | Full-time |
| **Years Of Experience:** | 1-2 years |
| **Industry:** | Travel, Transportation & Tourism |

KSL Classifieds prides itself on offering the premier local online classifieds service for Utah and the immediate vicinity. As with any classifieds services you should make every effort to verify the legitimacy of all offers and openings. Learn the warning signs and protect yourself.

Exhibit#14



**Labor Commission**
JACESON R. MAUGHAN
*Commissioner*

CHRISTOPHER C HILL
*Director*

**State of Utah**
GARY R. HERBERT
*Governor*
SPENCER J. COX
*Lt. Governor*

November 16, 2017

Robin Thompson
51 N 600 E
Centerville UT  84014

Re:    Robin Thompson v. Salt Lake Trucking Group LLC

UALD No. B8-0080
EEOC No. 35C-2018-00080

Dear Mr. Thompson:

This is to acknowledge that your discrimination complaint (called a "Charge") has been filed. The Charge filed alleges unlawful employment discrimination in violation of the Utah Antidiscrimination Act of 1965 and/or federal laws enforced by the Equal Employment Opportunity Commission (EEOC). A copy of this Charge has been forwarded to the EEOC and is also recognized as a Charge filed under its jurisdiction. Because of this, your Charge may be waived to the EEOC for processing. If it is waived, the Division will notify you.

Notice of your complaint will be sent to Salt Lake Trucking Group LLC within 10 days of the date it was received by the Division. The Respondent will be asked to submit a written response addressing and answering all issues involved in the complaint. **Please do not contact the Intake Officer who drafted your Charge regarding your case. An investigator will be assigned to the case at a later date.** In the meantime, please contact Connie Zaccheo at czaccheo@utah.gov if you have any questions.

**Mediation**: The Division is required by law under U.C.A. 34A-5-107(3) to attempt settlement between the parties. Therefore, we have scheduled a Mediation with you, the Respondent and a Division Mediator. **The Mediation will be held at the Heber M. Wells Building, 160 East 300 South, (Third Floor) Salt Lake City, Utah, on December 21, 2017 at 9:30 AM.**

The Mediation is informal and voluntary. Its purpose is to bring the parties together in an effort to reach a resolution mutually acceptable to both parties, as quickly as possible. A neutral UALD Mediator helps facilitate this effort and the communication between the parties. Early resolution of the charge has many advantages, some of which include: minimizing the time, energy and expense which is often required to address a complaint of discrimination; better use of your resources; and allowing you and the Respondent to decide how a dispute will be resolved without a third party imposing a resolution. The Mediation is **not** a hearing on the facts of the case, and the Mediator will not issue a decision on the merits of your case. In the event that the Mediation does not result in a successful resolution, the case will be assigned for investigation.

**Mediation attendance:**   **Please confirm your attendance by email to Sydney Deyoung at sdeyoung@utah.gov. One or both parties may attend by phone where they are not located in the Salt Lake City area. You may also reach Sydney by phone at (801) 530-6006. Rescheduling Mediation: If you need to reschedule the Mediation, please promptly (preferably by email) inform Sydney of your**

available day for a rescheduled time.  **Normally, Mediation is scheduled for 9:30 AM or 2:30 PM.**

If either party does not wish to mediate, we will notify you and continue to investigate the charge in the order in which it was received by the Investigator.  Please note that even if the parties do agree to Mediation, they must still provide the position statement, and Responses to Requests for Information as requested by the Division on the dates due.

**Translation Services:  The Division does NOT provide translation services.  You need to bring your own interpreter to the Mediation.  La division no ofrece servicios de traduccion.  Usted necesita traer su propio interprete a la Mediacion.**

**Documents and Information:**  Enclosed is a Request for Information.  Please provide this information to Connie Zaccheo **at czaccheo@utah.gov** within 30 days.

**Communication with the Division:**  The Division has a substantial caseload and it may take considerable time to complete the investigation.  You can assist us by:

- Referencing your UALD case number in all calls or correspondence to our office.
- Informing us in writing of any significant changes to the facts regarding your complaint.
- Informing us if you change your address or phone number.
- Mailing all correspondence to the Division's post office mailing address, and not street address.
- Keeping copies of all documents you send to our office.

**Retaliation:**  State and federal law make it illegal for employers to retaliate against anyone for filing a complaint, testifying, assisting, or participating in any manner in any investigation, proceeding, or hearing associated with filing this complaint or asserting any right protected under the Utah Antidiscrimination Act and applicable laws.

**Legal Representative:**  You must notify us in writing if you choose to have a lawyer represent or help you.

**Americans with Disabilities Act Notice:**  In compliance with the Americans with Disabilities Act, persons needing auxiliary communicative aids or services, or other reasonable accommodations, should give the Division at least three working days notice.

If you have any questions, please feel free to contact the Division at (801) 530-6801 or 1-800-222-1238.

Sincerely,

Kendra L. Shirey
Director

Enclosures:
EEOC Charge of Employment Discrimination
Investigation and Mediation Fact Sheets
Mediation Assignment Form
Request for Information

**c: Jared Allebest Esq**

**Information Requested from Charging Party**

Re:     Robin Thompson v. Salt Lake Trucking Group LLC
        UALD No. B8-0080 & EEOC No. 35C-2018-00080

**Instructions:**

1.      Complete this form, marking only one box for each piece of information needed.
2.      If you mark "Not Provided," then please also provide a written explanation.
3.      **Within 30 days of the date of this letter, send an electronic copy of this form to Connie Zaccheo at czaccheo@utah.gov <u>OR</u> you can send a hardcopy of the documents and information requested below by U.S. mail.**

In order to start the investigation, and if you have not provided it already, please submit the following information:

1.  Any documents, paperwork or personal notes supporting your claim of harassment or discrimination.
    ☐ **Provided**
    ☐ **Not Provided, Reason:** _____

2.  Any, paperwork or personal notes showing you complained of discrimination or harassment to Respondent's management.
    ☐ **Provided**
    ☐ **Not Provided, Reason:** _____

3.  If you alleged disability discrimination, any documents, paperwork or personal notes showing that you notified Respondent's management that you had a disability and that you needed a reasonable accommodation.
    ☐ **Provided**
    ☐ **Not Provided, Reason:** _____

4.  If you resigned or were terminated, any documents, paperwork or personal notes and all documentation leading up to and showing why your employment ended or why you resigned.
    ☐ **Provided**
    ☐ **Not Provided, Reason:** _____

5.  Provide the name of the person(s) that has the most information/knowledge regarding each of the following:
    a.      Your work performance and disciplinary actions;
    b.      Your employment separation, termination or resignation; and
    c.      Any complaints of discrimination or harassment you made to your employer.
    ☐ **Provided**
    ☐ **Not Provided, Reason:** _____

Please note that this information that is needed to help prove your case.  Thank you for your prompt response to these inquiries.  **Please submit the requested information no later than 30 days from the date of this letter.**

# CHARGE OF DISCRIMINATION

Utah Anti-Discrimination & Labor Division and EEOC

RECEIVED

NOV 1 4 2017

ANTIDISCRIMINATION
AND LABOR COMMISSION

| | |
|---|---|
| UALD No: BT-0080 | |
| EEOC No: 35C-2018-00080 | |

NAME *(Indicate Mr., Ms., Mrs.)*
Robin Thompson

HOME TELEPHONE *(Include Area Code)*
(801) 938-5830

STREET ADDRESS    CITY, STATE AND ZIP CODE
51 N 600 E, Centerville UT 84014

DATE OF BIRTH
Aug 04, 1967

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE,
STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME    *(If more than one list below.)*

NAME
Salt Lake Trucking Group LLC

TELEPHONE *(Include Area Code)*
(801) 679-4299

STREET ADDRESS
14686 S Birken St, Herriman UT  84096

COUNTY
Salt Lake

NAME    STREET ADDRESS

CAUSE OF DISCRIMINATION BASED ON

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☒ DISABILITY
☐ GENDER IDENTITY  ☐ SEXUAL ORIENTATION  ☐ RELIGIOUS LIBERTY PROTECTION

DATE DISCRIMINATION TOOK PLACE
*EARLIEST*    *LATEST*
09/26/2017

☐ CONTINUING ACTION

THE PARTICULARS ARE    *(If additional space is needed, attach extra sheets(s)):*

I applied online for a position of OTR Truck Driver.  I have a disability.  I have reason to believe because of this, I have been subjected to discrimination.

My application was accepted and I was set up for an interview September 26, 2017 at 5:30 pm.  On September 23, 2017, I emailed the interviewer asking for an ASL interpreter for the interview.  The interviewer emailed back stating that "you are applying for a job.  We are not reaching out to you specifically to say come work for us.  You reach to us for this job.  If you need an interpreter, you need to provide one and bring them with you.  Things would be different if we sought you out personally."  In another email the interviewer told me "if you need an interpreter you need to make provisions yourself."  I felt this was some form of harassment.  I went to the interview with my friend's 16 year old daughter to interpret.  An ASL interpreter was not present at that interview because the company did not provide one.  I never heard back from the company.  I believe the determining factor, why I did not get the job to be my disability.

I believe I have been harassed and discriminated against based on my disability.  I also believe the acts of this employer are in violation of Americans with Disabilities Act of 1990 and the Utah Antidiscrimination Act of 1965, both as amended.

I understand this charge will be filed with both the EEOC and the State or local Agency, if any, unless jurisdictional issues dictate otherwise.  I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY
State of Utah    )
County of DAVIS    )  ss.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF CHARGING PARTY

x Robin Thompson

SUBSCRIBED AND SWORN/AFFIRMED TO ME ON THIS 10th DAY OF
November 2017, by Robin Thompson
*(Charging Party)*

9.13.2019
My Commission Expires

NOTARY PUBLIC
BRITTANIE HALL
682930
COMMISSION EXPIRES
APRIL 13, 2019
STATE OF UTAH

Exhibit#15



**Labor Commission**
JACESON R. MAUGHAN
*Commissioner*

KENDRA L. SHIREY
*Director*

**State of Utah**
GARY R. HERBERT
*Governor*
SPENCER J. COX
*Lt. Governor*

February 22, 2018

Robin Thompson
51 N 600 E
Centerville UT 84014

Re:    Robin Thompson v. Salt Lake Trucking Group LLC
       UALD No. B8-0080 & EEOC No. 35C-2018-00080

Dear Mr. Thompson:

Enclosed is a copy of the Response received from Salt Lake Trucking Group LLC. Please review it. I would recommend you make notes regarding the points in the Response with which you agree or disagree, including:  your personal notes, copies of employment records, witness statements (dated, signed, with address and phone number of the witness), the names, phone numbers, and addresses of any witnesses with a short description of the information you believe they will provide to support your Charge. This will come in handy during the interview stage of the investigation.

In order for the Division to complete its investigation in this matter, you are required to fully cooperate with the Investigator. Failure to participate in the investigative process may result in a decision based upon the contents of the file or dismissal of your charge of discrimination. In addition, please inform us of any updates to your address and telephone number.

Sincerely,

Connie Zaccheo
*Utah Labor Commission*
UALD
801-536-7947
czaccheo@utah.gov

c: Jared Allebest Esq
Enclosure



David Jensen <davidjensen@utah.gov>

## Claim: B8-0080
1 message

**Andrew Glancy** <andrew@sltruckinggroup.com>                    Wed, Feb 21, 2018 at 4:05 PM
To: davidjensen@utah.gov

David,

As discussed over the phone yesterday, the Salt Lake Trucking Group is not a company that has employees.
It's a branding umbrella under which a few other companies operate.

Robin Thompson came in for an interview posted by FTA Transport Inc., however, he was not hired, and has
never been an employee of any company affiliated with the Salt Lake Trucking Group. Please let me know if
you need anything else regarding this claim.

Thanks!

Andrew Glancy
Salt Lake Trucking Group
p. 813-468-7547 | andrew@SLTruckingGroup.com

Exhibit#16

Law Offices of

# JARED M. ALLEBEST

8978 South Quarry Stone Way Sandy Utah 84094 | 949.322.3991 | jared@allebest.com

March 5, 2018

Utah Antidiscrimination & Labor Division
Employment Discrimination
160 East 300 South, 3rd Floor
PO Box 146630
Salt Lake City Utah 84114-6630

Re: Robin Thompson v. Salt Lake Trucking Group LLC
    UALD No. B8-0080 & EEOC No. 35C-2018-00080

To Whom It May Concern:

    I'm an attorney representing Robin Thompson in the matter regarding employment discrimination against Salt Lake Trucking Group, LLC.

    In Salt Lake Trucking Group's February 21, 2008 response to my client's charges, they state that "Robin Thompson came in for an interview posted by FTA Transport, Inc., however, he was not hired, and has never been an employee of any company affiliated with the Salt Lake Trucking Group." (See Attachment #1). They claim that they are "a branding umbrella under which a few other companies operate." (Id.)

    From the statement provided by the Salt Lake Trucking Group, LLC., it appears that that Salt Lake Trucking Group, LLC was acting either as a parent organization of FTA Transport, Inc or as the agent for FTA Transport, Inc. by conducting interviews on FTA Transport, Inc's behalf for the purposes of finding new employees for FTA Transport, Inc.

    Under Title I of the ADA, a covered entity "shall not discriminate against a qualified individual on the basis of disability in regard to job application procedures, *the hiring*, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112 (a).

    As a result, a covered entity cannot refuse "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the

1

operation of the business of such covered entity." 42 U.S.C. § 12112 (5)(A). It also means that a denial of "*employment opportunities to a job applicant* or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant" may also be a basis for discrimination. 42 U.S.C. § 12112 (5)(B).

Based on the information provided by Mr. Andrew Glancy of Salt Lake Trucking Group, we would like to add FTA Transport, Inc as a co-defendant/respondent in the matter of Robin Thompson v. Salt Lake Trucking Group LLC (UALD No. B8-0080 & EEOC No. 35C-2018-00080). Both Salt Lake Trucking Group, LLC and FTA Transport, Inc are jointly and severally liable for potentially violating Title I of the ADA in refusing to provide an ASL interpreter for Robin Thompson and using a newly hire employee's daughter to interpret for Mr. Thompson at his interview.

Sincerely,


Jared Allebest, Esq.

cc: Robin Thompson

2

Attachment #1

State of Utah Mail - Claim: B8-0080                    https://mail.google.com/mail/u/0/?ui=2&ik=a951eed640&jsver=9Ct...



David Jensen <davidjensen@utah.gov>

## Claim: B8-0080

1 message

**Andrew Glancy** <andrew@sltruckinggroup.com>                    Wed, Feb 21, 2018 at 4:05 PM
To: davidjensen@utah.gov

David,

As discussed over the phone yesterday, the Salt Lake Trucking Group is not a company that has employees. It's a branding umbrella under which a few other companies operate.

Robin Thompson came in for an interview posted by FTA Transport Inc., however, he was not hired, and has never been an employee of any company affiliated with the Salt Lake Trucking Group. Please let me know if you need anything else regarding this claim.

Thanks!

Andrew Glancy
Salt Lake Trucking Group
p. 813-468-7547 | andrew@SLTruckingGroup.com

Exhibit#17



**Labor Commission**
JACESON R. MAUGHAN
*Commissioner*

KENDRA L. SHIREY
*Director*

**State of Utah**
GARY R. HERBERT
*Governor*
SPENCER J. COX
*Lt. Governor*

## NOTICE OF RESCHEDULED MEDIATION

**TO:  Robin Thompson**

**TO:  Salt Lake Trucking Group LLC**

**UALD NO. B8-0080 & EEOC NO. 35C-2018-00080**

The Utah Antidiscrimination & Labor Division of the Utah Labor Commission (UALD) has **RESCHEDULED** the Mediation in the charge listed above.  If a mutual agreement cannot be reached at the Mediation, UALD will proceed with the investigation of the complaint.

The Mediation will be held at the Heber M. Wells Building, 160 East 300 South, (Third Floor) Salt Lake City, Utah 84116-6630, on May 1, 2018 at 9:30 AM.

Because of our commitment to effectively serve all the parties involved, we ask that you please confirm your attendance with Brent Asay **at basay@utah.gov**.

**In compliance with the Americans with Disabilities Act, persons needing auxiliary communicative aids or services, or other reasonable accommodations, should give the Division at least three working days notice to Brent Asay at basay@utah.gov.**

*This conference is set pursuant to:*
*Utah Antidiscrimination Act, Section 34-35-7.1. (3) (a), "Before a hearing is set or held as part of any adjudicative proceeding, the commission shall promptly assign an investigator (mediator) to attempt a settlement between the parties by conference, conciliation, or persuasion."*

Exhibit#18

**Labor Commission**
JACESON R. MAUGHAN
*Commissioner*

KENDRA L. SHIREY
*Director*

**State of Utah**
GARY R. HERBERT
*Governor*
SPENCER J. COX
*Lt. Governor*

June 11, 2018

Robin Thompson
51 N 600 E
Centerville UT  84014

Andrew Glancy
Fta Transport Inc
5745 W 300 S
Salt Lake City UT

Re:   Robin Thompson v. Salt Lake Trucking Group LLC
       UALD No. B8-0080 and EEOC No. 35C-2018-00080

Dear Mr. Thompson and Mr. Glancy,

This case has been assigned to me for investigation.  I reviewed the file and appreciate the information you have submitted.  Additional documents may be requested and interviews conducted at a later date.

This case is important to the Division.  However, please be advised that currently all investigators are assigned a considerable caseload and I am unable to work on your case immediately.  Each case is different and we cannot predict when the investigation will be completed, but at all time during the investigation, the parties are encouraged to continue to provide information to me that they believe is relevant to the Charge.

If your contact or address information has changed, please let me know right away.  Also if you are the Respondent, please inform me if your corporate address, contact information or ownership has changed.  I may be reached at (801) 530-6893 or at michaelbarrett@utah.gov.

The Division encourages voluntary resolution of the issues by the parties throughout our process.  If either party is interested in discussing resolution options or in submitting a proposal for settlement, please feel free to contact me.

Sincerely,

Michael Barrett
Investigator
Utah Antidiscrimination and Labor Division

Cc: c: Jared Allebest Esq

Exhibit#19



Jared Allebest <jared@allebest.com>

---

## UALD Case #B8-0080

---

**Jared Allebest** <jared@allebest.com>                                    Tue, Nov 27, 2018 at 3:42 PM
To: michaelbarrett@utah.gov
Bcc: Jared Allebest <Jared@allebest.com>, Dale H Boam <dboam@comcast.net>, Robin Thompson
<trobin.wun@gmail.com>

Michael,

After consulting with my client, we do not agree with the UALD's decision that the $1 award is what was
deemed appropriate by your office. Given that a minor interpreted for a potential employee, there is no way
the Salt Lake Trucking Company could have stated a reasonable reason for not hiring my client. The moment
the minor stepped into the room, the interview was void and illegal. Secondly, any decision they made
regarding my client was filtered through a young fourteen year old girl which would severely contaminate how
an employer would evaluate a deaf applicant and they could not have stated a reasonable and legal reason
not to hire him. Thus, my client's interview with the Salt Lake Trucking Company was illegal, unfair, and highly
unprofessional and unethical.

I wish to reiterate that my client has had plenty of experience driving and has driven for Uber and other
companies that require their employees to drive products and goods around town. But all of that information
failed to get through because there was minor interpreting in a job interview.

The UALD attempted to separate the Salt Lake Trucking company's decision from the alleged discriminatory
act as though these were separate issues and incidents. They are not because the discrimination and refusal
to hire flows from the (1) refusal to hire a certified and qualified ASL interpreter and (2) using a minor child to
interpret for an adult in a job interview and (3) refusing to hire my client because he is Deaf. There is no way
they had a legal basis to refuse to hire my client. Such actions are not only illegal and unprofessional, it is
highly insulting and *any reasonable person* would have acted the way my client did in an interview. He tried to
do his best under the circumstances to do a successful interview but he was clearly frustrated and annoyed
with the interviewer and the minor child.

Finally, put yourself in my client's shoes and imagine yourself either being a person from another country or
being deaf and having to rely on a minor to interpret for you in a foreign language or in ASL. Seriously, close
your eyes and run this scenario in your head. How would you have reacted in this situation? In all likelihood,
you would have bombed the interview because you would have been reasonably, justified in being visibly
frustrated with the employer for having allowed a child to interpret.

There is no possible way the UALD could have arrived at your decision given the fact pattern in this case.

We strongly urge your office to reconsider the $1 award to me client and urge you to award my client at least
$50,000 in this case given the outrageous nature of allowing a child to interpret for a deaf applicant looking for
a job which is disability discrimination, for refusing to hire an ASL interpreter and for not hiring my client
because he is Deaf. The Salt Lake Trucking Company will not learn their lesson unless it hits them in the
pocketbook for allowing this absurd job interview to even occur.

I wish to inform you that we are currently speaking with the media regarding your appalling decision and I
suggest that you reverse your decision before the story runs because it won't look good for either the UALD
or for the Salt Lake Trucking Group, LLC. Quiet frankly, the decision is an embarrassment and I am confident
that the public will agree with me on that and they will be outraged at your decision.

If you refuse to reconsider, we will appeal this matter until we obtain justice in this case. We are exploring all
of our options in this matter including taking the UALD's decision to the DOJ for review to see if there was
discrimination and/or bias in this decision.

---

Sincerely,

Jared

**JARED M. ALLEBEST**, JD, Esq.

Allebest Law Group,

*Mail:* 8978 South Quarry Stone Way Sandy Utah 84094

949/322-3991-cell    801/204-9055-videophone e-mail: jared@allebest.com

     Your referrals are the cornerstone of our business success.   They are both welcomed and most sincerely appreciated.

   *We specialize in:*

• **DISABILITY RIGHTS LITIGATION**: Negotiations, Arbitration, Mediation, Litigation, etc. for: disabled individuals who have encountered discrimination or denial of public access in violation of the ADA.

• **DEAF RIGHTS**: Education, Negotiations, Arbitration, Mediation, Litigation, etc.. for: deaf or hard of hearing individuals to ensure reasonable accommodations in employment, medical care, and housing.

• **ESTATE PLANNING**: Living Trusts, Insurance Trusts, Family Partnerships, Residence Trusts, etc. for: Probate Avoidance, Estate Tax Avoidance, and Creating an Orderly Plan Of Distribution.

• **BUSINESS PLANNING**: Partnerships, Corporations, LLCs, Contract Negotiations, Mergers, Acquisitions, Buy-Sell Agreements, etc. for: Entity Creation, Problem Solving, Business Expansion and Continuation.

  This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

  IRS CIRCULAR 230 DISCLOSURE: To ensure compliance with requirements by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

Allebest Law Group

[Quoted text hidden]

Exhibit#20

**Labor Commission**
JACESON R. MAUGHAN
*Commissioner*

KENDRA L. SHIREY
*Director*

**State of Utah**
GARY R. HERBERT
*Governor*
SPENCER J. COX
*Lt. Governor*

January 30, 2019

Robin Thompson
3989 N 2175 E
Layton UT  84040

Re:   Robin Thompson v. Salt Lake Trucking Group LLC
UALD No. B8-0080 and EEOC No. 35C-2018-00080 (ADA, UADA)

Dear Mr. Thompson:

This letter is to inform you that your complaint is being closed effective the date shown above, for the following reason:

You have asked the State of Utah to discontinue its administrative process and are requesting EEOC to provide you a Notice of Right to Sue.

Further, you have indicated that you do not wish to proceed and you have signed a withdrawal form in this matter.  No further action will be taken by us on this complaint.

If you have any questions regarding this decision, feel free to contact this office.

*If you need to know the status of your Notice of Right to Sue, please contact the EEOC Phoenix District Office at 1-800-669-4000.  Please note that it takes several weeks for the issuance of this notice.*

Sincerely,

Kendra L. Shirey
Director

KLS/gs

cc:  Kirk Glancy and Andrew Glancy
     Jared Allebest Esq

## REQUEST FOR WITHDRAWAL OF CHARGE OF DISCRIMINATION
## AND
## REQUEST FOR A NOTICE OF RIGHT TO SUE

You recently indicated a desire to withdraw your charge from the Utah Antidiscrimination & Labor Division (UALD) and request a Notice of Right to Sue from the Equal Employment Opportunity Commission (EEOC).

Please note that your charge is presently open with both the UALD and the EEOC. Completing this request will close your case with the UALD.

Charging Party:     Robin Thompson

Respondent:         Salt Lake Trucking Group LLC

UALD No.        B8-0080        EEOC No.      35C-2018-00080

I am aware that the EEOC and the UALD protect my right to file a complaint. I have been advised that it is unlawful for any person covered by the anti-discrimination laws to threaten, intimidate, or harass me because I have filed a complaint. I have not been forced to request this withdrawal.

I request the withdrawal of my charge because I plan to file a complaint in a judicial court of law. I hereby request the EEOC to issue me a Notice of Right to Sue. I understand the propriety of issuing the Notice may be challenged in court if the Notice is issued less than 180 days from the date I filed my complaint.

I further request that my charge filed with the Utah Antidiscrimination & Labor Division of the Labor Commission be WITHDRAWN.


_____        _____
Robin Thompson                              Date   1/28/19


| For UALD Use only: | For EEOC Use Only: |
|---|---|
| X  Approve _____ Disapprove | _____ Approve _____ Disapprove |
| Division Director _Kendra Y Shin_ | Director |
| Date: 1/30/2019 | Date: |

Exhibit#21

## SALT LAKE TRUCKING GROUP, LLC

Update this Business

**Entity Number:** 9575141-0160
**Company Type:** LLC - Domestic
**Address:** 14686 S Birken St Herriman, UT 84096
**State of Origin:**
**Registered Agent:** Jonathan Kirk Glancy
**Registered Agent Address:**
14686 S Birken St
Herriman, UT 84096

View Management Team

Status: Active

Purchase Certificate of Existence

**Status: Active** ⊙ *as of 11/16/2017*
**Renew By:** 10/31/2019
**Status Description:** Current
The "Current" status represents that a renewal has been filed, within the most recent
renewal period, with the Division of Corporations and Commercial Code.
**Employment Verification:** Not Registered with Verify Utah

History

View Filed Documents

**Registration Date:** 10/20/2015
**Last Renewed:** 08/23/2018

Additional Information

**NAICS Code:** 4841 **NAICS Title:** 4841-General Freight Trucking

Former Business Names

SL TRUCKING GROUP, LLC

<< Back to Search Results

Search by:    Business Name    Number    Executive Name    Search Hints

Business Name:

Exhibit#22

## FTA TRANSPORT, INC

Update this Business

**Entity Number:** 9362874-0142
**Company Type:** Corporation - Domestic - Profit
**Address:** 5745 W 200 S Salt Lake City, UT 84104
**State of Origin:**
**Registered Agent:** JONATHAN GLANCY
**Registered Agent Address:**
5745 W 300 S
Salt Lake City, UT 84104

View Management Team

Status: Active

Purchase Certificate of Existence

**Status:** Active ⦿ *as of 03/27/2015*
**Renew By:** 03/31/2020
**Status Description:** Current
The "Current" status represents that a renewal has been filed, within the most recent
renewal period, with the Division of Corporations and Commercial Code.
**Employment Verification:** <u>Not</u> Registered with Verify Utah

History

View Filed Documents

**Registration Date:** 03/27/2015
**Last Renewed:** 03/28/2019

Additional Information

**NAICS Code:** 4841 **NAICS Title:** 4841-General Freight Trucking

<< Back to Search Results

Search by:    Business Name    Number    Executive Name    Search Hints

     Business Name:



5/11/2019, 12:01 PM